JEANNE DE BOULET, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

First Department, June 4, 1920.

**Municipal corporations — negligence — duty of municipality to remove snow and ice from sidewalks — action against city of New York to recover for injuries caused by fall on icy sidewalk — erroneous charge.**

No duty rests upon a municipality in the first instance to remove snow and ice from sidewalks where it has devolved that duty upon the owners or occupants of abutting property. Such obligation does not arise until an accumulation of ice and snow upon the sidewalk becomes dangerous to

public travel and the city has either actual or constructive notice of such dangerous condition and a reasonable time has elapsed after such notice to afford it an opportunity in the exercise of reasonable care to remove the dangerous accumulation of ice and snow, and the performance of this duty, when it arises, does not require the city to display unreasonable and extraordinary diligence or to remove dangerous accumulations of snow and ice, unless they are removable by the employment of ordinary and reasonable means and methods.

In an action against the city of New York brought to recover damages for personal injuries sustained by the plaintiff who fell upon an icy sidewalk, it was error so to charge as to take from the jury the vital question as to whether the condition of the ice rendered the walk dangerous and unsafe for public travel, and if so at what time the dangerous and unsafe condition arose so as to start the running of constructive notice to the city, and it was error to embody rulings thereon in favor of the plaintiff as a matter of law, as these issues should have been left to the determination of the jury.

Moreover, it was error to eliminate from the charge all reference to testimony of the defendant that ashes, sand and sawdust had been spread upon the ice to render it safe for travel.

So, too, it was error to charge in effect that as a matter of law if the walk was covered with ice or iced snow for four days, that it was in a dangerous and unsafe condition, for that question was one of fact for the jury.

APPEAL by the defendant, The City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 6th day of November, 1919, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the 12th day of November, 1919, denying defendant's motion for a new trial made upon the minutes.

*Henry J. Shields* of counsel [*John F. O'Brien* and *David C. Broderick* with him on the brief; *William P. Burr, Corporation Counsel*], for the appellant.

*Mark M. Schlesinger* of counsel [*Gardenhire & Schlesinger,* attorneys], for the respondent.

LAUGHLIN, J.:

This is an action for personal injuries sustained by the plaintiff from slipping and falling on ice on the southerly sidewalk of West Seventy-ninth street in front of the premises known as Nos. 168–170 West Seventy-ninth street, on Wednesday, the 12th day of December, 1917. The plaintiff resided

and conducted a rooming-house and dress-making business at No. 160 West Seventy-ninth street in the same block and a few doors easterly of the point where she met with the accident. She left her house, between twelve and one o'clock in the middle of the day, wearing laced shoes with broad Cuban heels and walked westerly on the sidewalk *en route* to a locksmith's on Amsterdam avenue. She testified that she noticed that there was a heavy layer of crushed snow on the walk which she had noticed for several days prior thereto and that she was walking as carefully as she could, but that she slipped and fell; that it snowed all day the preceding Saturday, and that about three inches of snow fell during that storm; that she had the snow removed from her walk, but that none of it was removed from Nos. 168–170 from the time it fell until after she met with the accident; that it continued freezing weather from the time the snow fell and that in front of the premises where she fell the snow had become " iced " and that there were no ashes or other substance spread upon its surface; that there was a slight snow fall the morning she fell, but that at the time of the accident it was a bright, clear day; that the condition of the walk where she fell " was not good " on Sunday, but that " it was not as bad as on the 12th," and that it became " worse " and " got harder " between the ninth and twelfth; that on Sunday it was freezing, but, in front of the premises in question, the accumulation on the walk looked like plain white snow about three inches thick and that " it was getting glassy," and that on Monday it was freezing hard and that the only change she observed in the condition of the snow on the walk was that it was " harder," and that it was then " hard, just hard like ice; " that it continued freezing-cold weather and the snow which fell Wednesday morning, which she could not say amounted to one-fourth of an inch, was on the walk, crushed down by people walking over it; that the sidewalk was not sufficiently dangerous, excepting at the spot where she fell, to require the wearing of rubbers, and that at the time of the accident, owing to the light fall of snow that morning, the appearance of the walk was " like crushed snow that had been tramped; it did not look so icy," and she said it looked to her " just like crushed, hard snow " over which

people had walked, crushing it up like ice, and that where she fell it looked like smooth ice and that the snow and ice at that point were " lumpy " and " irregular " and did not present a " smooth surface," and that she fell on ice covered with crushed snow and that she saw smooth ice where her body landed. A neighboring woman called as a witness for the plaintiff testified that the sidewalk where the plaintiff fell was " full of ice and snow, very heavy ice, very lumpy and heavy ice, the worst condition I have ever seen," and that it had remained so for four or five days and that " there was ice and snow, great, big, heavy chunks of ice which had been there several days; " that the snow had been walked on and presented a dirty appearance and that it was very hard " to walk over; " that the snow on the ice was bedded right into the sidewalk and was very hard to walk on, and that the snow and ice was so thick that it would require an axe to break through it. A police officer called by the defendant testified that between the 8th and the 12th of December, 1917, all of the walks in the vicinity were covered " with a kind of a sheet of ice " and that he had given all property owners notice to remove it, but that before the twelfth the sidewalks had been cleaned, and in effect that this particular walk was cleaned diligently; but on cross-examination he said he could not say that he saw the walk cleaned from the eighth to the twelfth or that there was not snow and ice on it two or three inches thick. Another police officer testified that there was some ice on part of the sidewalk, but that it was covered with salt, sawdust and sand; and a third officer testified that according to his recollection the sidewalk was cleaned, but that there was a little ice on it which was covered with ashes and salt and that he had seen the walk cleaned after the snowfall of the eighth, and that it was part of his duty to report sidewalks that are in a dangerous condition as a result of an accumulation of snow and ice and that he did not so report the walk in question. The janitor, whose duty it was to clean the sidewalk, testified, in substance, that he removed the snow that was removable and put on rock salt and ashes. Another witness for the defendant, the mother superior of the convent in front of which the sidewalk was, testified that a school was conducted there and that the janitor cleaned the

walk every day, and that on Saturday afternoon and evening after the snow fell it rained and that then the weather became extremely cold and that ashes, salt and sawdust had been spread over the sidewalk covering the ice and were on the surface of the walk the ninth, tenth, eleventh and twelfth and that this was its condition at the time of the accident. The defendant also showed by the testimony of the officer in charge of the United States Weather Bureau in the city of New York how the records of the bureau were kept and that the weather conditions were such that there could be no snow or ice at the time of the snowfall of December eighth, and that on December eighth snow commenced falling at ten-seventeen A. M., turning entirely into rain at four-fifty-five P. M., at which time about two inches of snow had fallen and that the rain was very heavy and that something over one inch of rain fell after the snowfall ended; that the rain tended to melt the snow and that not more than one-half of an inch of snow remained on the ground at eight P. M. that day; that no rain or snow fell on the ninth; that on the tenth three-tenths of an inch fell and that on the early morning· of the twelfth two-tenths of an inch fell and that there was no other precipitation; that on Saturday the temperature was below freezing until three P. M., and that it rose to forty-five degrees at eight P. M. and fell to thirty-eight degrees by midnight and that it continued falling to fifteen degrees on the ninth and remained well below freezing from that time on until after the accident, going down to nine degrees on the eleventh; that the entire depth of snowfall on the eighth was only two inches and that considerable of this melted and that generally throughout the city the rain melted the snow so that only about one-half inch remained when the rain ceased, and that there was not a natural accumulation of snow and ice of two or three inches between the eighth and the twelfth on any walk; that when the rain fell on the two inches of snow it changed it into slush and that where the snow did not melt or the rain did not wash it away there might have been one or two inches of slush which froze that night.

A city ordinance enjoined upon abutting property owners, lessees, tenants, and occupants or other persons having charge thereof the duty of removing snow and ice from paved side-

walks within four hours after the snow ceased to fall but excluded therefrom the time between nine P. M. and seven A. M. (Code of Ordinances of City of New York, chap. 22, art. 3, § 21.) Under that ordinance no duty was enjoined to remove the snow that fell on Saturday until Sunday morning at a time when, according to the evidence, the snow would have turned into slush and would have been frozen hard so that it could not have been removed without great difficulty. It may be that under the recent decision of the Court of Appeals in the case of *Williams* v. *City of New York* (214 N. Y. 259) the evidence presented a *prima facie* case for the consideration of the jury, but in view of the comparatively small amount of snowfall, not exceeding two inches, according to the records of the Weather Bureau, which should be accepted rather than the indefinite opinions of witnesses, and of the weather conditions preceding such snowfall, there could not have been a natural accumulation of snow or ice, or both, on the walk to the extent testified to by some of the witnesses for the plaintiff. It is well settled that no duty rests upon a municipality in the first instance to remove snow and ice from sidewalks where, as here, it has devolved that duty upon the owners or occupants of abutting property and that until an accumulation of ice and snow upon the sidewalk becomes dangerous to public travel and the city has either actual or constructive notice of such dangerous condition and a reasonable time has elapsed after such notice to afford it an opportunity in the exercise of reasonable care to remove the dangerous accumulation of ice and snow, and the performance of this duty, when it arises, does not require the city to display unreasonable and extraordinary diligence or to remove dangerous accumulations of snow and ice unless they are removable by the employment of ordinary and reasonable means and methods. (*Harrington* v. *City of Buffalo*, 121 N. Y. 147; *Kaiser* v. *City of New York*, 184 App. Div. 866; *Village of Carthage* v. *Frederick*, 122 N. Y. 268; *Crawford* v. *City of New York*, 68 App. Div. 107; affd., 174 N. Y. 518; *Taylor* v. *City of Yonkers*, 105 id. 202; *Peard* v. *City of Mount Vernon*, 83 Hun, 250; affd., 158 N. Y. 681; *Gaffney* v. *City of New York*, 218 id. 225; *Kaveny* v. *City of Troy*, 108 id. 571; *Betts* v. *Village of Gloversville*, 29 N. Y. St. Repr. 331.)

The court in the charge in chief did not refer to the city ordinance devolving this duty on owners or occupants of abutting property in the first instance or instruct the jury that there was no duty on the city until it had actual or constructive notice that there was a dangerous accumulation of ice and snow on the sidewalk; that after such notice it was entitled to a reasonable time under all the circumstances within which to protect the public against the danger. The court charged the general rule of law with respect to negligence and contributory negligence and that the duty devolved on the city to keep the sidewalks in a safe condition for public travel, but it was not an insurer of pedestrians, and stated that the plaintiff rested her case on proof that the sidewalk was in an unsafe condition and that it so continued for such a length of time that the city had constructive notice thereof. At the close of the charge the court further instructed the jury at the request of the attorney for the plaintiff that if they found that the pavement in question " was covered with ice, or iced snow, for four days or so prior to the accident, then a dangerous and unusual condition of the street existed." Thereupon plaintiff's counsel requested the court to charge that if they so found then there was a lapse of time sufficient to charge the city with constructive notice " of that condition;" whereupon the court said: " That is, if it existed for four or five days and the City did have a fair opportunity of putting it in a safe condition, bearing in mind all the time that there was an obligation upon the part of the plaintiff to act in going over it, even under those circumstances, in the way in which an ordinarily prudent person would act." Counsel for the defendant excepted to the first request charged for the plaintiff and requested the court to charge " that to hold the city liable the jury must find that it was dangerous and unusual and exceptional, that is, different from the streets in general throughout the city." To this request the court replied, " That is so. I will so charge in connection with the other. I will let the other stand and charge that." I am of the opinion that the jury may well have misapprehended their duty under those instructions. The first request of the plaintiff which was charged took from the jury the vital question as to whether the condition of the ice or iced snow rendered

the walk dangerous and unsafe for public travel, and if so
at what time did the dangerous and unsafe condition arise
so as to start the running of constructive notice to the city
and embodied rulings thereon in favor of plaintiff as matter
of law.   I am of the opinion that on these facts those points
should have been left to the determination of the jury.   The
learned trial court in so ruling followed a statement in the
opinion of the Court of Appeals in the *Williams Case (supra)*
which I think could not have been intended for the instruction
of juries, for none of the many former decisions of that court,
plainly holding that such questions on like facts are for the
jury, was overruled.   This error was not corrected by the
additional charge, for the first request stood as charged and
laid down an erroneous rule for the guidance of the jury in
determining what was a dangerous condition of the walk, for
they were instructed, in effect, as a matter of law that if the
walk was covered with ice or iced snow for four days then
it was in a dangerous and unsafe condition.   That by no
means follows.   On the facts of this case there might have
been rough ice formed by the freezing of slush or there might
have been iced snow which would not render it unsafe for
public travel as a matter of law, and which the jury might
have found was not dangerous or unsafe, if it had been left
to them as a question of fact.   Moreover, the charge elimi-
nated entirely the evidence on the part of the defendant to
the effect that ashes, salt, sand and sawdust were spread
upon the surface of the ice and snow, and the court, doubtless
inadvertently, in effect, instructed the jury as a matter of
law that if the ice or iced snow was there for the period speci-
fied regardless of whether anything had been spread on the
surface thereof to render it safe for travel it was dangerous.
Any argument that might be made to the effect that the error
in charging the plaintiff's first request was corrected by the
instruction given at the request of counsel for the defendant is,
I think, met and overcome by the subsequent proceedings
on the trial.   Counsel for the city thereupon stated that the
court had instructed the jury that the city was liable if it
had actual or constructive notice, and he requested the court
to instruct the jury that its liability did not attach until
the condition of the sidewalk became dangerous and that it

was entitled to a reasonable time, after notice, actual or constructive, of the dangerous condition, to remedy it. The rule of law with respect to the city's liability was correctly stated in that request (*Harrington* v. *City of Buffalo, supra; Kaiser* v. *City of New York, supra*), and it had not been stated to the jury in the main charge. In answer to this request, the court instead of charging it, as requested, erroneously stated the rule, in one important respect, to the jury as follows: " There must have been a danger in the first place, then actual or constructive notice, notice directly brought to an officer of the City or a continuance of that danger for such time as to put the City on notice. That is what is called constructive notice. I think I have made it clear, after that the City is to have a reasonable opportunity, that is, a fair opportunity, of removing it. If that condition existed for four or five days, as is charged by the plaintiff, I charge you as matter of law, that would create a dangerous condition; if it did not so exist there could not be any liability at all. Plaintiff is resting squarely on the proposition it did so exist."

No exception was taken to this final instruction, but it will be observed that an exception had already been taken to like instructions given in charging plaintiff's first request. The misleading and erroneous part of this last statement made by the court is in again charging as a matter of law, in substance, that if the condition of the walk existed for four or five days that would create a dangerous condition. It was for the jury to find and not for the court to rule as a matter of law whether or not the walk was in a dangerous condition for public travel, and when it became so, for the uncontroverted evidence is that its condition was changing and there is no evidence that any other pedestrian fell upon the walk.

It follows that the judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., SMITH, PAGE and MERRELL, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.