KATHERINE FITZPATRICK, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

First Department, April 22, 1927.

**Municipal corporations — claim against city of New York for damages for injuries suffered by plaintiff when she fell on slippery sidewalk — examination of claimant by comptroller under Greater New York Charter, §§ 149, 261 — burden on plaintiff to show she appeared for examination — plaintiff's evidence does not show appearance — waiver of examination by city not shown — negligence not shown.**

In an action against the city of New York to recover damages for injuries suffered by the plaintiff when she fell on a slippery sidewalk, the burden was upon her to show that she appeared before the comptroller for examination in compliance with a notice served upon her, as required by sections 149 and 261 of the Greater New York Charter. The evidence does not show that she appeared at the time and place set in the notice, the only evidence on that point being testimony by herself and her son to the effect that they did appear at the corporation counsel's office and were told by someone that the examination had been adjourned, but they were unable to fix the date or the particular room or floor to which they went. Furthermore, it was conceded by plaintiff's counsel that she never appeared.

The contention by the plaintiff that the comptroller waived the right to examine her is supported by unsatisfactory evidence on her part, which is entirely outweighed by evidence on the part of the defendant, and the verdict on this question is contrary to the evidence; furthermore, the complaint pleads compliance with the charter provisions and not waiver thereof.

Negligence on the part of the city was not shown by the plaintiff, since it appears that, even though the sidewalk may have been slippery in part, there was a space along the house line that was entirely free from ice which was wide enough for one or two persons to pass over, and furthermore, the testimony by the defendant tended strongly to establish that the sidewalk was free from ice and testimony on the part of a representative from the Weather Bureau tended to show that the condition complained of could not have existed at the time. The evidence does not establish that the city had either constructive or actual notice of the alleged condition of the sidewalk for two days prior to the accident.

DOWLING, P. J., and McAvoy, J., dissent.

APPEAL by the defendant, The City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 22d day of April, 1926, upon the verdict of a jury for $2,500.

*J. Joseph Lilly* of counsel [*Louis Diamant* with him on the brief; *George P. Nicholson, Corporation Counsel*], for the appellant.

*Arthur K. Wing* of counsel [*James G. Purdy* with him on the brief; *Wing & Wing*, attorneys], for the respondent.

MARTIN, J. The Greater New York Charter (Laws of 1901, chap. 466, § 149, as amd. by Laws of 1917, chap. 401, and Laws of 1923, chap. 667; Id. § 261, as amd. by Laws of 1912, chap. 452) provides that one suing the city may not recover unless, after a notice provided for therein is served by the comptroller, an opportunity is given him to examine the claimant so that he may decide whether he will settle or adjust the claim.

At the trial of this case an assistant corporation counsel testified that, though properly served with such notice, plaintiff failed to appear for examination; that someone called him on the telephone and requested an adjournment, to which request he acceded on condition that there be a stipulation in writing; and that no such stipulation was signed.

Printed on the notice to the plaintiff there appeared this warning: " Application for an adjournment should be made to the assistant in charge at least one day prior to the date set for examination. No adjournment may be had except on written stipulation, and then only without prejudice to the Comptroller's right to settle or adjust the claim within the same period of time after such adjournment as would be had were the examination held on the original date stated therein, and that no suit be instituted until after the expiration of such period."

During the cross-examination of the assistant corporation counsel the following occurred: " Mr. Wing: Q. How do you know, Mr. Easton, that she never appeared? A. If she had appeared my record would show it. The Court: Is the plaintiff in Court? Mr.

Wing: Yes. The Court: Stand down. Mr. Wing: I will concede that she never appeared."

Despite this admission the plaintiff testified that she did appear at the corporation counsel's office in answer to the notice, was told the examination had been adjourned and that she would be notified to appear at a later date. She was unable to fix the month, the day or hour, floor or room. Her son testified that he accompanied his mother to the corporation counsel's office but was unable to tell the floor, room, date or hour, although he did say it was probably in the latter part of August.

The court charged: " There is no evidence in the case of any written adjournment or any agreement to adjourn to a specific day by counsel, so that that branch of the case rests upon whether or not you believe this lady's testimony that she went down there and offered to subject herself to the examination. When I say her testimony, I mean her and her son's. If you believe that she did go down and was told that she was not to be examined that day but it would be adjourned and that she would receive notice when she was to come back, then she did all that she was called upon to do. If the Comptroller never notified her to come back and never reduced the adjournment to a specific stipulation of a day, you may find that he waived it.

" If, on the other hand, she did not go down there that day, there being no proof that there was a specific agreement to adjourn to a given day, then she did not comply with what was required of her, and she cannot maintain this suit. It all rests upon whether you believe that testimony of herself and her son that she went down there."

In addition the court cast the burden of proving that the plaintiff did not appear for examination upon the city. We believe that the burden was upon plaintiff to show that she appeared at the time and place set forth in the notice, or that an adjournment was given by someone having authority to grant an adjournment. The protection intended by the charter provisions would prove to be of little value if, in lieu of complying therewith, the claimant could successfully offer vague testimony that at some time and place not fixed there was an appearance for examination. The city of New York, with an ever-increasing number of claims, would be wholly deprived of the protection afforded by the statute, if a plaintiff might recover on testifying that she went to some office and saw somebody who told her the examination was adjourned, though she might be unable to give any details from which it may be fairly determined that there was an appearance as required.

It is fair to assume that if plaintiff offered to submit to exami-

nation, her attorney would see that an adjournment was properly stipulated.

In *Casey* v. *City of New York* (217 N. Y. 192) the court said: " The evidence establishes that notice to appear for examination before the comptroller on October 5, 1910, was duly given to plaintiff and that adjournments of the examination were had from time to time at the request of plaintiff on account of her physical inability to appear for examination, with the understanding, at least on the part of the comptroller, that such adjournments were without prejudice to the comptroller's right to settle or adjust the claim within the same period of time after such examination as the comptroller had at the date originally fixed, and that such adjournments were carried to a date long beyond the commencement of the action. The comptroller is entitled to examine the claimant to ascertain whether or not an adjustment or settlement ought to be made. If he seeks such an examination, and for no other reason than lack of information as to the merits of the claim, due to claimant's inability to appear for such examination, fails to pay or adjust the claim, it cannot be said that his failure to pay is a neglect or refusal to make an adjustment or payment. It should appear that he has waived or otherwise lost the right to examine the claimant. (*Tolchinsky* v. *City of New York,* 164 App. Div. 636.) The fact of the comptroller's neglect or refusal to pay or adjust plaintiff's claim was an essential part of her cause of action, to be alleged and proved by her. ' Municipal liability for injuries is a matter that is within the control of the Legislature and when it is enacted what that liability shall be, and the conditions upon which it may be enforced are prescribed, the statutory provisions are controlling on the subject.' (*Winter* v. *City of Niagara Falls,* 190 N. Y. 198, 203.) "

It is sought to bring this case within the doctrine of *Moren* v. *City of New York* (163 App. Div. 561), where it was held that the right to examine was lost under the particular circumstances of the case. An adjournment had been agreed upon, but no definite date set for the examination. The summons and complaint having thereafter been served, it was held that the city had lost the right to examine. *Tolchinsky* v. *City of New York* (164 App. Div. 636; affd., 220 N. Y. 633) is more applicable. Mr. Justice SCOTT, writing for the court, said: " It is clear that sections 149 and 261 of the charter should be read together. So read, it is apparent that it was the intention of the Legislature that the comptroller should have, in addition to the power to adjust and settle claims, and as incident thereto, the right to examine the claimant to ascertain whether or not an adjustment or settlement ought to

be made. Of course he need not seek such an examination, but if he does seek it, and takes timely action under the charter to secure it, the claimant may not in our opinion nullify the charter provisions and deprive the comptroller of an examination. The words ' neglected or refused to make an adjustment or payment ' as used in section 261 mean something more than a mere failure to pay. They imply, when read in conjunction with section 149, a positive determination by the comptroller, after exhausting such means of information respecting the justness of the claim as he deems necessary and as the charter permits, that he will not pay or adjust the claim. This was recognized by the plaintiff's attorneys when they stipulated for an adjournment of the examination and that such adjournment should be ' without prejudice to the. Comptroller's right to settle or adjust the claim within the same period of time after such examination is held as the Comptroller had at the date fixed originally for such examination, and that no suit may be brought until after the expiration of such period of time.' The provisions of section 261 of the charter above quoted would soon become a dead letter if every claimant could with impunity refuse to be examined, and yet treat the comptroller's failure to pay, presumably due to the lack of information as to the merits of the claim, as a neglect or refusal to make an adjustment or payment. The comptroller is entitled to a fair opportunity to decide whether he will adjust or pay a claim or subject the city to a lawsuit, and to enable him to so decide the law has provided for an examination of the claimant. If such claimant by a refusal to be examined prevents the comptroller from reaching an intelligent determination as to whether or not his claim should be adjusted or paid, he cannot be heard to say that the comptroller has ' neglected or refused ' so to adjust or pay it." (See, also, *Sheedy* v. *City of New York,* 202 App. Div. 760; affd., 238 N. Y. 579.)

In *Winter* v. *City of Niagara Falls* (190 N. Y. 198, 203) the Court of Appeals, GRAY, J., writing the opinion, said: " I am not without doubt upon the question whether a statutory provision of this kind can be waived by the municipal authorities."

In the present case the evidence of waiver was wholly unsatisfactory. It was outweighed by that to the contrary for the city. In addition, we have admissions of counsel that there was no appearance for examination. The whole record shows that on this point the verdict is against the weight of the evidence.

Furthermore, the complaint pleads compliance with the charter provisions and not waiver thereof.

We are also of the opinion that the plaintiff failed to establish negligence on the part of the city.

On February 14, 1923, at about seven-thirty P. M., while walking on West Fifty-first street, between Ninth and Tenth avenues, in the city of New York, plaintiff slipped on the sidewalk and fell. She asserts that there was smooth ice upon the sidewalk; that she failed to observe the ice; and that the walk had been in the same condition for at least two days before she was injured. It is admitted, however, that along the house line there was a space entirely free from ice, amply sufficient for one or two persons to pass.

The testimony of plaintiff's witnesses was to the effect that the ice had been in the same condition for two or three days, and that where she fell it was about one inch thick. At least six witnesses testified that the sidewalk was cleared. In addition the report of Mr. Scarr from the Weather Bureau is contradictory of the testimony for plaintiff, indicating that no such condition as that asserted by her could have existed at the time and place of the accident, as well as that the sidewalks were slippery because of the conditions as to rain and snow which had continued for several days and because of the low temperature on the evening that the accident occurred.

In *Harrington* v. *City of Buffalo* (121 N. Y. 147, 150) the court said: " The danger arising from the slipperiness of ice or snow lying in the streets, is one which is familiar to everybody residing in our climate and which everyone is exposed to who has occasion to traverse the streets of cities and villages in the winter season. Accidents occurring from such causes are chargeable solely to the persons injured, unless it can be shown that the cause thereof has been occasioned, aggravated or negligently permitted by the act of some third party charged with the duty of obviating or removing it. It was essential to the maintenance of this action that some breach of duty on the part of the defendant should have been proved occurring prior to the happening of the accident which was the cause of the alleged injury."

To hold the city liable there must be proof of actual or constructive notice.

In *DeBoulet* v. *City of New York* (192 App. Div. 359, 365) the court said: " The court in the charge in chief did not refer to the city ordinance devolving this duty on owners or occupants of abutting property in the first instance or instruct the jury that there was no duty on the city until it had actual or constructive notice that there was a dangerous accumulation of ice and snow on the sidewalk; that after such notice it was entitled to a reasonable time under all the circumstances within which to protect the public against the danger."

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

MERRELL and FINCH, JJ., concur; DOWLING, P. J., and McAVOY, J., dissent.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.