MARY THREAT, Plaintiff, *v.* CITY OF NEW YORK and MICHELL KIRTLAND, Receiver for the EIGHTH AND NINTH AVENUES RAILWAY COMPANY, Defendants.

Municipal Court of New York, Borough of Manhattan, Seventh District, June 25, 1936.

*Maurice J. Hatz,* for the plaintiff.

*Paul Windels, Corporation Counsel [Aaron Arnold* of counsel], for the City of New York.

*Morgan J. O'Brien, Jr.* [*L. J. McKenna* of counsel], for the receivers for the Eighth and Ninth Avenues Railway Company.

LEWIS (DAVID C.), J. A verdict has been rendered against the two defendants for injuries suffered by the plaintiff while a passenger of the Ninth Avenue Railway Company in a collision between a truck of the city sanitation department and a trolley car of the railroad company.

The court will not disturb the finding of the joint negligence of both defendants.

This opinion is confined to a consideration of sections 149 and 261 of the Greater New York Charter and only affects the defendant the city of New York.

It is provided in section 261 of the Greater New York Charter: " No action or special proceeding, for any cause whatever shall be prosecuted or maintained against the city of New York, unless it shall appear by and as an allegation in the complaint or necessary moving papers that at least thirty days have elapsed since the demand, claim or claims upon which such action or special proceeding is founded were presented to the comptroller of said city for adjustment, and that he has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment."

Section 149 of the Greater New York Charter provides: " The comptroller may require any person presenting for settlement an account or claim for any cause whatever, against the corporation, to be sworn before him or before either of the deputy comptrollers, touching such account or claim, and when so sworn, to answer orally as to any facts relative to the justness of such account or claim."

As against the city, no verdict could stand unless the provisions of the Greater New York Charter were duly honored.

" ' The fact of the comptroller's neglect or refusal to pay or adjust plaintiff's claim was an essential part of her cause of action, to be alleged and proved by her. " Municipal liability for injuries is a matter that is within the control of the Legislature and when it is enacted what that liability shall be, and the conditions upon which it may be enforced are prescribed, the statutory provisions are controlling on the subject." (*Winter* v. *City of Niagara Falls*, 190 N. Y. 198, 203.) ' " (*Fitzpatrick* v. *City of New York*, 220 App. Div. 320, at p. 323.)

The plaintiff had presented her claim for payment. She had never presented herself for examination. For the plaintiff claimed that the city never served any notice on her to appear for examination — never required her to be sworn pursuant to the charter.

Upon the trial the city produced the regular printed notice (which had been used by it) addressed to the attorney for the claimant and bearing his alleged admission of service. The attorney disavowed the signature and denied the receipt of the notice. The process

server was called as a witness. He frankly confessed that he had no independent or distinct recollection of this particular service; nor did he even assert a refreshed recollection. All that he could testify to was the established ritual for serving papers; that he would call at an office, hand in the paper, and at times receive it back with an admission of service. He would have no knowledge of either the identity or the authority of the signer. Such testimony cannot be raised to the dignity of positive proof. This situation prompted the question whether the law prescribed a method for the service of this notice by the city.

No authority or reference specifically upon the point was available at the trial. To avoid prejudice or error, the court, with the consent of counsel, made an appropriate stipulation allowing its decision to be held in abeyance and giving it full authority to dispose of the questions after the trial. Counsel continue the assertion that there is neither law nor statute on this precise query. However, the higher courts have repeatedly treated service of the notice effected on an attorney for the claimant in the same manner as papers in an action, sufficient. This attitude of the higher court lends sanction to the practice and bids for recognition. I do not believe it commands blind obedience.

There is a pardonable natural reluctance to defeat the purposes of any statute passed for the protection of the city and the promotion of the general welfare. The court cannot disregard the origin and objects of these charter provisions. (*Matter of Grout*, 105 App. Div. 98.) And the claimant must comply with their requirements.

"The comptroller is entitled to a fair opportunity to decide whether he will adjust or pay a claim or subject the city to a lawsuit, and to enable him to so decide the law has provided for an examination of the claimant. If such claimant by a refusal to be examined prevents the comptroller from reaching an intelligent determination as to whether or not his claim should be adjusted or paid, he cannot be heard to say that the comptroller has 'neglected or refused' so to adjust or pay it." (*Tolchinsky* v. *City of New York*, 164 App. Div. 636.) (See, also, *Sheedy* v. *City of New York*, 202 App. Div. 760; affd., 238 N. Y. 579.)

The court believes, however, that the substantial rights of the individual are on a par with the protection of the interest of the city; that there are corresponding responsibilities as well as corresponding rights; though the one may have to wait upon the other. The two sections of the charter must be read together.

Thus the responsibility of the claimant to appear and submit to examination must wait on the due exercise by the city of its right to require such attendance and examination. So unless the city

acts, the claimant cannot default. If the city does not duly act, the claimant is free to proceed. If the city does duly act and the claimant defaults, the claimant cannot proceed. A step of such vital consequence as the service of the notice by the city on the claimant, demands corresponding consideration. Withal the courts have leaned to reasonable construction of these charter provisions, in their application against the city.

" This provision should be reasonably construed. Its purpose is to protect the city against unfounded claims by enabling its law officers to investigate promptly the circumstances surrounding the alleged accident and the place where it is said to have occurred. It is not a trap to catch the unwary or the ignorant." (*Sweeney* v. *City of New York*, 225 N. Y. 271.)

Indeed, the city has been held bound without personal service on the comptroller.

" It is quite evident that the most strict construction of the statute would *not require an absolute personal delivery to the comptroller.*" (*MacDonald* v. *City of New York*, 42 App. Div. 263, at p. 266.)

But the claimant occupies a different position than the city, and the reason or rule which governs the application of the charter provisions to the city does not fit the claimant.

Then again the claimant must look to the court for protection. And it must be admitted that where the law is silent on the method of the service of a notice, personal service is necessary.

" When the statute is silent as to the character of service, it must be personal. When it prescribes the method of service, that method must be strictly pursued. (*Reg.* v. *Meath*, 2 Ir. Rep. 21; *Allen* v. *Strickland*, 100 N. C. 225; Phillips Mech. Liens, § 321.) * * *

" The lienor here is virtually brought into court by the notice in question for the opportunity of exercising the substantial right to examine into the validity of the undertaking which lifts the lien, and it would follow that the statute that provides for such notice must be followed in ' every essential particular.' (*Seymour* v. *Judd*, 2 N. Y. 464; cited in *Merritt* v. *Village of Port Chester*, 71 id. 309, 311; Endl. Interp. Stat. § 435.) " (*Matter of Blumberg*, 149 App. Div. 303.)

Rules cannot change law.

" Even under our present system where the judicial department is not free and responsible to itself alone but must conform to an inflexible procedure prescribed by the Legislature." (*Lambert* v. *Lambert*, 270 N. Y. 422.)

Notwithstanding the attorney represents the claimant, the service of the original claim on the city is not tantamount to the commencement of an action; he is not an attorney appearing in any action. (*Brehm* v. *City of New York,* 104 N. Y. 186, at p. 190.)

But these rulings do not say there may be no other service than personal service on the claimant. For it is the object sought by the notice rather than the method adopted that determines the problem.

And if the claimant or her attorney was actually served and that fact was established, the omission of formal proof would not defeat the jurisdiction thus acquired. For the actual receipt of the notice by one or the other might answer the demand of the law.

" Whether he does this personally or by mail, is, we think, immaterial, so long as it is actually received." (*Sweeney* v. *City of New York, supra,* at p. 275.)

" Jurisdiction is obtained by service and the failure of proof of service does not render the service void or the jurisdiction defective." (*Lambert* v. *Lambert, supra,* at p. 427.)

These principles maintain a desirable, if not an essential, consistency between law and justice. If one reviews the facts, he finds that the claimant retained the attorney. She designated him as her attorney in the filed claim, and thus announced his retainer to the city. In her complaint she affirmed and adopted his acts as such attorney in her behalf. And these acts were essential preliminaries. (*George* v. *City of New York,* 42 Misc. 271.)

After such avowal, the authority of the attorney is beyond repudiation.

" With this provision the comptroller complied. He *required the claimant* to attend for examination, and that requirement was notified to him through his attorneys who had filed the claim on his behalf and whose names appeared upon the demand for adjustment. To say that they were not attorneys because no action had been commenced is a mere evasion. They represented themselves as attorneys for claimants upon the very notice under *which plaintiff seeks to benefit.* The notice to appear for examination was properly given and should have been complied with." (*Matter of Farley* v. *Weil,* 63 Misc. 188, 191.)

But though the attorney represented the claimant, there would have to be due service on him or proof of actual receipt by him. Since there was no action pending, we must fall back upon personal service as the only due service. No personal service has been established. We then look for proof of actual receipt. The alleged admission of service may inherit the benefit of a practice and procedure long endured; but when it is challenged it cannot prevail

unless sustained. Especially should this be so in a case like this, when it would sound the doom of an innocent and injured litigant and snatch away her justly earned verdict.

This ruling may appear at odds with the opinion of our Court of Appeals. " The evidence establishes that notice to appear for examination before the comptroller on October 5, 1910, was duly given to plaintiff." (*Casey* v. *City of New York*, 217 N. Y. 192.)

But in that case, like in many similar suits, there was more than the naked admission of service. There were signed adjournment stipulations, and communications by the said attorney for the claimant with the city, all of which in themselves clearly evidenced the actual receipt by the attorney of the notice to attend and be examined.

The case at bar cannot boast of such evidence or proof, and the question must be resolved by proof and not presumption. There has been no claim of personal service and there is no proof of actual receipt.

Upon the record as it stands, the motion of the city to dismiss the complaint or set aside the verdict must be denied.