[607 NYS2d 689]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EARL DUNN, Appellant.

Second Department, February 7, 1994

**APPEARANCES OF COUNSEL**

*Peter Branti, Jr.,* New City *(Barbara Blanchard* of counsel), for appellant.

*Kenneth Gribetz, District Attorney* of Rockland County, New City *(Deborah Wolikow Loewenberg* of counsel), for respondent.

**OPINION OF THE COURT**

ROSENBLATT, J.

■ The case before us concerns the admissibility of incriminating statements given by a defendant of limited mental capacity. We hold that the defendant's inability to comprehend or waive his *Miranda* rights does not rule out the admissibility of a spontaneous, self-initiated statement that he made while in custody.

A jury found the defendant guilty of manslaughter in the first degree and aggravated sexual abuse in the first degree. The facts, which were not in dispute, established that the defendant was obsessed with the possibility of his paramour having relations with other men. He assaulted her, as a result of which she died of over 100 stab wounds.

At the time, the defendant and the victim were inpatients at the Rockland County Psychiatric Center. The defendant was 39 years old and had a 22-year history of uncontrollable violent episodes and psychiatric institutionalization. He was diagnosed as having an IQ that varied between 58 and 73, and a pattern of explosive, assaultive behavior. The expert testimony revealed that defendant's primary diagnosis was antisocial personality disorder and mild mental retardation.

Before trial, the court conducted a *Huntley* hearing. Bernard Ellis, a safety officer at the Psychiatric Center and a State law enforcement officer, testified that the defendant, shortly after his arrest, was so aggressive that he had to be subdued and handcuffed to a chair at the State Police barracks, where his clothes were taken from him. No one was

questioning or even talking to the defendant, who then initiated a conversation with Ellis. He told Ellis that he "didn't want to do it", that "she was always mentioning other guys she was with and that made him jealous and mad", that he "really didn't want to do it, she made [him]", and he asked Ellis: "What would you do if you were me?" Concededly, the defendant made these utterances before being warned of his *Miranda* rights, and while he was obviously in custody. Ellis then asked the defendant, who was still unwarned, how he got into the building in which the deceased was found. The defendant explained how he did so, and that it was to have sex with his paramour. Shortly thereafter, according to New York State Police Investigator Paul Kunar, the defendant was given *Miranda* warnings, waived his rights, and gave Kunar a detailed account as to how he stabbed and killed his paramour.

At the hearing the defendant testified that he could not read or write, and that he did not understand the *Miranda* warnings (as read to him by his attorney at the hearing). In essence, however, he confirmed Bernard Ellis's account of the remarks he made to Ellis. The defendant also testified that Ellis did not threaten him. Beyond that, he testified as to having told the State Police investigator that he stabbed the victim repeatedly during an argument in which she denied having sex with another man.

There are three statements. The first statement, to Bernard Ellis, was offered as having been initiated by the defendant, who was then unwarned. The second statement followed immediately, when the defendant, still unwarned, was responding to questions put by Ellis. The defendant made the third statement when being questioned by Investigator Kunar after the warnings had been administered.*

## I

A defendant's mental deficiency weighs against the admissibility of an elicited confession, so that any such confession must be measured by the degree of the defendant's awareness of the nature of the rights being abandoned and the consequences of the decision to abandon them *(see, Moran v Burbine,* 475 US 412, 421). The analysis must rest on a case-by-

---

* The defendant did not dispute the killing, but asserted the affirmative defense of lack of criminal responsibility by reason of mental disease or defect *(see,* Penal Law § 40.15).

case basis, depending on the facts and the totality of circumstances, including the setting, the defendant's age, intelligence, level of functioning, and related considerations *(Withrow v Williams,* 507 US —, —, 113 S Ct 1745, 1754; *Fare v Michael C.,* 442 US 707, 725, *reh denied* 444 US 887; *see generally,* Annotation, *Mental Subnormality of Accused as Affecting Voluntariness or Admissibility of Confession,* 8 ALR4th 16).

In keeping with these criteria, courts have examined statements made by persons of limited mental capacity, and have in some cases found compliance with *Miranda (see, People v Williams,* 62 NY2d 285; *People v Corona,* 173 AD2d 484; *People v Bucknor,* 140 AD2d 705; *People v Dorsey,* 118 AD2d 653; *People v Gerald,* 128 AD2d 635), while in other cases have found a defendant's mental ability to have been below the level required for comprehension and waiver *(see, People v Posey,* 74 Misc 2d 149; *Cooper v Griffin,* 455 F2d 1142; *United States v Hull,* 441 F2d 308; *People v Randolph,* 58 Misc 2d 167).

█ In this case, because defendant concededly could not adequately comprehend the *Miranda* warnings, the court properly suppressed the statement that the defendant made while in custody under questioning by Kunar, after being warned. Also, the court properly suppressed the statement the defendant made while in custody and under questioning by Ellis, before being warned *(Miranda v Arizona,* 384 US 436; *People v Jones,* 47 NY2d 528; *People v Turkenich,* 137 AD2d 363).

## II

The defendant argues that his acknowledged incapacity to comprehend the *Miranda* warnings should result in a finding of "involuntariness" as to the first statement made to Ellis. We note that before and apart from *Miranda,* courts have long held that a person's limited intellectual ability bears appreciably on the voluntariness of the person's response to interrogation. This is true on due process grounds, insofar as it involves voluntariness in the traditional sense, which is to say, free from physical or psychological force, duress, or the weakening of one's will *(see, Fikes v Alabama,* 352 US 191, *reh denied* 352 US 1019; *Payne v Arkansas,* 356 US 560; *Culombe v Connecticut,* 367 US 568; *People v Joyce,* 233 NY 61). This line of authority, however, contemplates statements born of

an interrogative process, in which the issue is whether a mentally deficient suspect has the volitional capacity to respond freely and voluntarily to police questioning, given his or her mental enfeeblement, vulnerability, and susceptibility to overreaching *(see generally,* Annotation, *Validity or Admissibility, Under Federal Constitution, of Accused's Pretrial Confession as Affected by Accused's Mental Illness or Impairment at Time of Confession—Supreme Court Cases,* 93 L Ed 2d 1078).

In the case before us, however, the hearing court found that the challenged statement was spontaneous, and not the product of interrogation. In this setting, therefore, the question of "voluntariness" must be resolved in terms of whether the defendant *volunteered* his statement so as to take it out of the criteria associated with interrogation. The test is whether the statement was or was not made in response "to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect" *(Rhode Is. v Innis,* 446 US 291, 301).

A spontaneous, volunteered statement is one made without any external prompting *(see, People v Lynes,* 49 NY2d 286) as opposed to one that is elicited directly or indirectly *(see, People v Lucas,* 53 NY2d 678; *People v Maerling,* 46 NY2d 289, 301-303; *People v Lanahan,* 55 NY2d 711) or otherwise induced by police action *(see, People v Bodner,* 75 AD2d 440). If the statement is truly spontaneous, meaning self-generated, the statement will be admissible even though the defendant was in custody, and unwarned *(see, People v Huffman,* 61 NY2d 795), or improperly warned *(see, People v Padilla,* 123 AD2d 364). It will even be admissible even though the defendant had an attorney *(see, People v Kaye,* 25 NY2d 139) or had earlier declined to make a statement *(see, People v Rivers,* 56 NY2d 476).

The statement in question straddles two settled lines of authority, one involving statements by mentally deficient defendants, the other involving statements characterized as spontaneous. Employing the standards referred to in these two groupings, we find that they coalesce, so as to render the challenged statement admissible. We conclude that a statement offered as spontaneously made by a person of limited intelligence must be examined in light of the surrounding circumstances so as to rule out prodding or subtle maneuvering by would-be interrogators.

In support of his claim, and drawing upon authority pointing out that courts are suspicious of statements given by mentally deficient suspects, the defendant cites cases in which the court found that the defendant's mental *(see, People v Golwitzer,* 52 Misc 2d 925) and emotional *(People v Zimmer,* 68 Misc 2d 1067, *affd* 40 AD2d 955) infirmity rendered him or her incapable of giving a knowing and involuntary *Miranda* waiver. *Golwitzer* and *Zimmer,* however, involve police interrogation, the very antithesis of spontaneous, self-initiated remarks.

We disagree with defendant's contention that the mental disability which rendered him incapable of grasping the *Miranda* waiver and warning concepts stripped him of the capacity to make a spontaneous, volunteered statement. The cautions expressed by the courts in examining waivers by people of limited intellect have little or no application to spontaneous, volunteered utterances. The process of comprehension and of weighing the consequences of a recited set of rights requires mental and experiential analyses. Spontaneity, on the other hand, is entirely self-generated, and, if genuine, is free from external stimuli. It carries none of the dangers that are associated with interrogating those who are particularly open to suggestability, chicanery, or the like.

In the case before us we are mindful of the less than ideal setting and conditions under which the statement was made, as well as the mental vulnerability of the defendant. We conclude, however, that the court properly admitted the statement. There is no evidence at all suggestive of implantation, overreaching, conversation, or any subtle devices that provoked the defendant to initiate his remarks to Bernard Ellis. The authorities did nothing designed to generate or elicit a statement from the defendant, and we therefore conclude that the court was correct in ruling the statement admissible.

We have considered the defendant's other contentions and find them lacking in merit.

THOMPSON, J. P., MILLER and RITTER, JJ., concur.

Ordered that the judgment is affirmed.