■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MATTHEW J. LAYBOULT, Respondent. [641 NYS2d 918] —Spain, J. Appeal from an order of the County Court of St. Lawrence County (Nicandri, J.), entered May 3, 1994, which granted defendant's motion to suppress a statement of defendant.

In February 1992 the State Police commenced an investigation based upon allegations of sexual offenses involving some members of defendant's family. The investigators questioned his sisters, the alleged victims, at the State Police barracks. The following day defendant's mother honored the request of the State Police to bring in defendant for questioning; his brother was also questioned upon the belief that he too was a victim of sexual offenses. Defendant, who was 16 years of age and viewed by the investigators as both a victim and a perpetrator, was then questioned out of his mother's presence. After a few minutes of casual conversation, defendant was read his *Miranda* rights; he indicated that he understood his rights and in response to an investigator's question, "Do you know why you are here?", defendant responded in the affirmative and stated that he had "humped" his brother and sisters. He then made a number of additional admissions. Within an hour an incriminating statement was typed and signed by defendant, after it was read to him by one of the investigators and reviewed by him. Defendant was indicted on four counts of sodomy in the first degree, two counts of incest and four counts of sexual abuse in the first degree. Defendant filed an omnibus motion seeking, *inter alia,* suppression of his statement on the grounds that he did not have sufficient intellectual capacity to understand his rights, and therefore could not knowingly and intelligently waive those rights; that his mother was not allowed to be present during the interrogation; and that his parents were not allowed to assert defendant's right to counsel.

County Court conducted a *Huntley* hearing at which the People presented the testimony of the two State Police Investigators who questioned defendant; defendant's statement

was also introduced. Defendant presented the testimony of five witnesses including his mother, his grandmother, Barbara Silman (a psychologist and coordinator of a local crisis team for the State Developmental Disabilities Office), and Richard Koch and Linda Woodward (two of defendant's teachers at BOCES). Defendant also introduced school records and a psychological assessment. After the hearing, County Court found, *inter alia*, that defendant's educational level and capacity was not very high and that his reading was at an elementary grade level. Concluding that the People failed to establish beyond a reasonable doubt that defendant made a knowing and intelligent waiver of his right to remain silent, County Court granted defendant's motion to suppress. The People appeal.

We affirm. An analysis of a defendant's ability to understand the waiver and abandonment of his or her constitutional rights must be conducted on a case-by-case basis upon review of the totality of surrounding circumstances including, *inter alia*, defendant's age, intelligence and level of functioning (*see, People v Williams*, 62 NY2d 285, 288-290; *People v Dunwoody*, 89 AD2d 569, 570; *see also, Withrow v Williams*, 507 US 680, 693; *Fare v Michael C.*, 442 US 707, 725). At the *Huntley* hearing, one of the State Police Investigators who interrogated defendant testified that, after interviewing his three siblings, she and another investigator initially spoke to defendant about "other matters" not related to the investigation. Within a few minutes after the beginning of their conversation she read defendant his *Miranda* rights from a card and then made an effort to explain those rights to him in the "vernacular", hoping to make them "a little easier for him to understand"; however, when questioned, she was unable to articulate how she accomplished this goal (*compare, People v Williams, supra,* at 289). When asked if he understood the warnings, the investigator testified that defendant responded "Yeah"; defendant then stated that he was there because he "humped" his siblings. The investigator further testified that, prior to signing the statement, defendant read it and made a change to it and also that neither his mother nor his grandmother asked to be present during defendant's questioning.

Silman testified that defendant had completed two standard intelligence tests and the results indicated an IQ of between 55 and 70 and that he was within a range of mildly retarded to borderline retarded, which translates to a mental age of $8^1/_2$ years; the four-page psychological assessment of defendant supports Silman's testimony. Koch testified that defendant's reading level was between the second and fourth grades, and

Woodward testified that defendant "has a hard time reading on his own". Defendant's mother gave conflicting testimony concerning her understanding of the reason why defendant was being questioned; however, she was unequivocal in her recollection of her request to join defendant during his questioning.

Defendant, who was considered a possible perpetrator by the investigators, was escorted away from his mother and grandmother prior to questioning. The record supports County Court's finding that his mother was denied access to him during the questioning. Under the circumstances of this case, it was reasonable for defendant to believe that he was not free to leave (*see, People v Centano*, 76 NY2d 837, 838; *People v Yukl*, 25 NY2d 585, 589, *cert denied* 400 US 851). Further, it is clear from the evidence elicited at the *Huntley* hearing that, although defendant's *Miranda* rights were read to him, there is insufficient proof that they were ever explained to him at a level, due to his limited intelligence, which he could comprehend (*see, People v Dunn*, 195 AD2d 240, 243, *affd* 85 NY2d 956); therefore, we conclude that County Court properly suppressed the statement. Recognizing that credibility determinations made by the suppression court are to be accorded great deference (*see, People v Cline*, 192 AD2d 957, *lv denied* 81 NY2d 1071; *People v Harper*, 165 AD2d 897, *lv denied* 77 NY2d 906), we find no reason to disturb County Court's findings and conclusions (*see, People v Carbone*, 184 AD2d 648, 649).

Mikoll, J. P., Mercure, White and Casey, JJ., concur. Ordered that the order is affirmed.