■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARTIN SANCHEZ, Appellant. [680 NYS2d 29] —Yesawich Jr., J. Appeals from two judgments of the County Court of Albany County (Breslin, J.), rendered January 2, 1997 and February 10, 1998, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree and reckless endangerment in the first degree (two counts).

On October 29, 1995, at approximately 2:40 A.M., police were summoned to the vicinity of Lexington and Sheridan Avenues in the City of Albany, where it was reported that shots had been fired. The officers responding to the call saw a group of people running south on Sheridan Avenue, chasing several others, one of whom was believed to be the shooter. When the fleeing individuals entered an apartment building, the crowd stopped outside the building and one man described those being pursued as three Hispanic persons, a female and two males. One of the males was said to be dressed all in black and the other—who was identified as having fired the shots—assertedly was wearing black pants and a silky or satin white shirt.

The outside of the building having been secured, three officers, accompanied by a trained police dog, entered the common hallway, where a building resident directed them to a first-floor apartment. There, the officers knocked and identified themselves several times before the apartment door opened, revealing a woman backing away with her hands raised. Two men, whose attire matched the witness's description, were also present in the small apartment; the only other occupant was a baby sleeping in a bedroom. The three adults were directed to

get down on the floor and were patted down, but no weapons were found. Police Officer Arthur Shade, whose attention was focused on the man in the light shirt—later identified as defendant—asked him where the gun was located. Though initially evasive, when pressed defendant directed Shade to look under a mattress, where he found a gun and seven or eight bullets. The three individuals were then handcuffed, read their *Miranda* rights and taken to the police station.

Charged with, *inter alia*, reckless endangerment in the first degree (two counts) and criminal possession of a weapon in the second degree, defendant moved to suppress certain evidence, including the gun itself. His motion was denied and he was convicted, after a jury trial, of the aforementioned crimes and sentenced accordingly. This appeal followed.

Defendant challenges the propriety of County Court's suppression ruling. County Court found that Shade's inquiries as to the location of the gun, made in the course of apprehending a suspect who had reportedly just discharged it in a public place, fell squarely within the "public safety" exception to the requirement that *Miranda* warnings be administered prior to any custodial interrogation (*see, New York v Quarles*, 467 US 649, 655-656). Plainly, his questions were not intended to obtain incriminating evidence, but rather to ascertain, for reasons of public safety, the location of a dangerous weapon and to quell an escalating and potentially volatile situation (*see, People v Melvin*, 188 AD2d 555, 556, *lv denied* 81 NY2d 889; *People v Ingram*, 177 AD2d 650, 651, *lv denied* 79 NY2d 858; *cf., People v Adams*, 225 AD2d 506, *lv denied* 88 NY2d 932; *compare, Matter of John C.*, 130 AD2d 246, 253-254). Until the officers located the gun, they had no way of knowing whether it was within the immediate reach of defendant or one of his cohorts (as it indeed was), nor could they be sure that it did not pose a danger to the general public (*see, New York v Quarles, supra*, at 657). Given these circumstances, the officers' failure to inform defendant of his *Miranda* rights, or to obtain a search warrant, before seeking to discover the weapon was fully justified (*see, People v Mitchell*, 39 NY2d 173, 177-178, *cert denied* 426 US 953).

Cardona, P. J., Mikoll, Crew III and White, JJ., concur. Ordered that the judgments are affirmed.