■ The People of the State of New York, Respondent, v Dejuan Cole, Appellant. [807 NYS2d 166]—

---

Spain, J. Appeal from a judgment of the Supreme Court (Lamont, J.), rendered February 25, 2004 in Albany County, upon a verdict convicting defendant of the crimes of sodomy in the first degree and endangering the welfare of a child.

Defendant's convictions of sodomy in the first degree and endangering the welfare of a child, following a jury trial, stem from an incident on the evening of November 22, 2002 when defendant, then age 16 and visiting neighbors, engaged in anal sexual contact with the neighbor's six-year-old son (hereinafter the child) in a closet. A medical exam the following day revealed two perianal tears and, when questioned by police, defendant admitted this conduct and signed a written confession, introduced at trial, detailing what had occurred. Sentenced upon his convictions to concurrent terms of 10$^1$/$_2$ years for the sodomy conviction and one year for the endangering conviction, defendant appeals raising a wide range of contentions for reversal, and we affirm.

We begin with defendant's challenges to several pretrial rulings. We find no error in the denial of his motion to dismiss the indictment as defective (*see* CPL 210.35 [5]). The motion was premised upon the presentation of the child's unredacted emergency room medical records which contained a notation that the mother believed that there may have been two similar incidents the prior summer. No testimony was adduced to this effect and no prosecutorial misconduct is evident; in view of the sufficiency of the admissible evidence which supports the indictment, we find no real possibility that these notations prejudiced the ultimate decision reached by the grand jury so as to warrant this drastic, "exceptional remedy" (*People v Huston*, 88 NY2d 400, 409 [1996]; *see People v Moffitt* 20 AD3d 687, 688-689 [2005]).

Defendant also contends that his oral and written statements

to police detectives should have been suppressed because his *Miranda* rights were not adequately explained to him or knowingly waived, and police isolated him from his grandmother and used deceit to prevent her from assisting him. The testimony elicited at the *Huntley* hearing, at which the interviewing detective and grandmother testified, fully supports County Court's (Breslin, J.), findings that defendant and his grandmother voluntarily accompanied police to the station to discuss these allegations. Defendant was placed in an interview room (while his grandmother waited in a nearby office), read *Miranda* warnings and indicated, when asked, that he understood and was willing to speak with them; after briefly denying any misconduct, defendant was told of the allegations and supportive medical evidence and then confessed, thereafter signing a type written account of the incident. No evidence was adduced that defendant had limited intellectual abilities (*cf. People v Williams*, 62 NY2d 285 [1984]; *People v Layboult*, 227 AD2d 773 [1996]), police ascertained his reading ability by having him read part of the statement aloud, and the totality of circumstances supported the conclusion that he knowingly and voluntarily waived his *Miranda* rights (*see People v Insonia*, 277 AD2d 819, 823 [2000]), *lv denied* 96 NY2d 735 [2001]. Defendant never requested to leave, to make a phone call or the presence of an attorney or his grandmother during the interview, which lasted only about two hours (*see People v Rogers [Rodgers]*, 247 AD2d 765, 766 [1998], *lvs denied* 91 NY2d 976, 977 [1998]). Police were under no obligation to provide his grandmother with access to him during the interview (*see People v Wells*, 18 AD3d 1022, 1024 [2005], *lv denied* 5 NY3d 796 [2005]; *see also People v Salaam*, 83 NY2d 51, 55-56 [1993]) and there was no evidence of trickery or coercion to elicit the waiver and confession or to wrongfully isolate him from his grandmother (*see People v Salaam, supra* at 55; *People v Insonia, supra* at 821-823). Thus, his suppression motion was properly denied.

We similarly uphold Supreme Court's denial of defendant's motion to dismiss based upon speedy trial grounds. As the court's detailed written decision correctly determined, defendant was arrested on November 24, 2002, indicted on December 18, 2002 and the People announced and filed their readiness for trial on December 23, 2002 at a time they were "in fact ready to proceed" (*People v Kendzia*, 64 NY2d 331, 337 [1985]), resulting in 29 chargeable days to the People, and the People thereafter at all times maintained readiness as required (*see People v Anderson*, 66 NY2d 529, 535 [1985]). Despite defendant's claims, the People's September 25, 2003 motion for a buccal swab of defendant for DNA analysis, which was not required to present a

prima facie case at trial (*see People v Swamp*, 84 NY2d 725, 728-729 [1995]; *People v Van Hoesen*, 12 AD3d 5, 7-9 [2004], *lv denied* 4 NY3d 804 [2005]), did not render the People's statement of readiness illusory (*see People v Cross*, 273 AD2d 702, 703 [2000]), and was not a direct impediment to commencement of the trial; thus, that period is not chargeable to the People (*see People v McKenna*, 76 NY2d 59, 64 [1990]; *cf. People v England*, 84 NY2d 1, 3-4 [1994]). Also, the period of postreadiness delay between the *Huntley* hearing on April 17, 2003 and County Court's issuance of a decision denying that motion on November 10, 2003 was not chargeable to the People (*see* CPL 30.30 [4] [a]; *People v Rodriguez*, 306 AD2d 686, 687 [2003], *lv denied* 100 NY2d 624 [2003]; *People v Boomer*, 220 AD2d 833, 836 [1995]). Accordingly, defendant's motion to dismiss was properly denied.

With regard to Supreme Court's ruling, following a *Frye* hearing, denying defendant's request to permit expert testimony from a forensic psychologist regarding the administration and results of a "Grisso test" upon defendant—a device used to measure an accused's ability to comprehend *Miranda* warnings—we find no abuse of discretion (*see People v Wesley*, 83 NY2d 417, 422 [1994]; *People v Cronin*, 60 NY2d 430, 433 [1983]; *People v Johnston*, 273 AD2d 514, 517-518 [2000], *lv denied* 95 NY2d 935 [2000]; *People v Shepard*, 259 AD2d 775, 777 [1999], *lv denied* 93 NY2d 979 [1999]; *People v Rogers [Rodgers], supra* at 766). The record supports the court's conclusions that the tests had not gained sufficient acceptance for reliability and relevance in the scientific community, and the vocabulary used to gauge defendant's understanding of the *Miranda* warnings differed substantially from the warnings defendant received. Further, the expert testified at length at trial, during which defense counsel had substantial opportunity to challenge defendant's ability to understand and waive the *Miranda* warnings as given (*see People v Johnston, supra* at 518).

Turning to the trial issues, neither defendant's challenge to the sufficiency of the evidence nor to the adequacy of the corroboration of his confession has merit. Defendant's sodomy conviction required proof that he engaged in "anal sexual conduct with another person . . . [w]ho is less than eleven years old" (Penal Law § 130.50 [3]), which defendant's confession sufficiently established (*see People v Bleakley*, 69 NY2d 490, 495 [1987]). The corroboration requirement (*see* CPL 60.50) is met by " 'some proof, of whatever weight', that the offense charged has in fact been committed by someone" (*People v Booden*, 69 NY2d 185, 187 [1987], quoting *People v Daniels*, 37 NY2d 624,

629 [1975]; *see People v Nolan*, 2 AD3d 1221, 1222 [2003]) and it "need not establish guilt or corroborate every detail of the confession" (*People v Guillery*, 260 AD2d 661, 661 [1999], *lv denied* 93 NY2d 971 [1999]; *see People v Lipsky*, 57 NY2d 560, 562-563 [1982]; *People v Daniels*, 37 NY2d 624, 629 [1975]). We find that the mother's observations upon discovering the child in the closet with defendant (albeit no sexual activity was seen), the child's behavior immediately thereafter and the fact that his underpants were found pulled down under his pants, combined with the perianal tears which were consistent with his complaints of pain, all in conformity with defendant's confession, amply satisfied the corroboration requirement (*see People v Guillery, supra*).

Next, defendant argues that evidence of the child's "prompt outcry" was not direct proof of guilt and should not have been admitted where the victim did not testify (*see People v Zurak*, 168 AD2d 196, 198 [1991], *lv denied* 79 NY2d 834 [1991], *cert denied* 504 US 941 [1992]; Prince, Richardson on Evidence § 8-615 [Farrell 11th ed]). However, despite several lengthy colloquies on this issue prompted by the People's request for a pretrial ruling, the defense never raised this argument before Supreme Court and did not move to strike the testimony on this basis and, thus, this claim is unpreserved for our review (*see* CPL 470.05). On this record, we also find the defense waived any objection by recounting the essential details of the child's complaint at the outset in its opening statement, and any error was harmless (*see People v Crimmins*, 36 NY2d 230, 242 [1975]). Moreover, the mother's testimony regarding the child's account of what happened essentially repeated what the defense had already made known to the jury.

Defendant's claims notwithstanding, we agree with Supreme Court's ruling that CPL 710.30 notice was not required with regard to defendant's statement to his grandmother after the police interview was concluded—that he was "sorry"—which was overheard by police, because it was not made "to a public servant" (CPL 710.30 [1] [a]). Defendant also had actual notice of the statement from the *Huntley* hearing testimony (*see People v Wright*, 283 AD2d 883, 884 [2001], *lv denied* 96 NY2d 909 [2001]).

Next, Supreme Court properly allowed the emergency room pediatrician who treated the child to testify concerning his statements to her of the manner in which he was injured. The statements were admissible, as the physician testified they were germane to the diagnosis, examination and treatment of the child (*see People v Dennee*, 291 AD2d 888, 889 [2002], *lv denied*

98 NY2d 650 [2002]), and did not identify defendant as the perpetrator (*cf. People v Thomas*, 282 AD2d 827, 828 [2001], *lv denied* 96 NY2d 925 [2001]).

Finally, we find no improvidence in Supreme Court's denial of defendant's request for youthful offender status (*see People v Boyce*, 2 AD3d 984, 987 [2003], *lv denied* 2 NY3d 796 [2004]; *People v Victor J.*, 283 AD2d 205, 206-207 [2001], *lv denied* 96 NY2d 942 [2001]; *see also* CPL 720.10 [2] [a] [iii]; [3]). We have also considered defendant's request that we exercise our discretion, in the interest of justice, to modify the 10½-year sentence (*see* CPL 470.15 [2] [c]; [6] [b]), but are not persuaded to do so. While this is defendant's first criminal conviction—he was only 16 years old at the time—and the record reflects that he likely suffers from some developmental and emotional disabilities and mental illness, Supreme Court rationally concluded that defendant's forceful victimization of this young child is deserving of the sentence imposed.

We have considered all of defendant's other contentions raised on appeal and are satisfied that none has merit.

Mercure, J.P., Carpinello, Rose and Kane, JJ., concur. Ordered that the judgment is affirmed.