Skelos, J.P.,
dissents and votes to affirm the judgment with the following memorandum: By convicting the defendant of burglary in the third degree (see Penal Law § 140.20), the jury implicitly found that, at the time the defendant entered the garage, he had an intent to commit a crime therein. In conducting its weight-of-the-evidence review, the majority has essentially determined that the jury’s finding in this regard was not “justified” (People v Danielson, 9 NY3d 342, 348 [2007]; see People v Mateo, 2 NY3d 383, 410 [2004], cert denied 542 US 946 [2004]). However, based on the weight of the credible evidence, I believe that finding was justified (see People v Danielson, 9 NY3d at 348). Therefore, I respectfully dissent.
The complainant lived in a house located in East Meadow, Nassau County. The house had a detached garage. The garage was accessible via a side door, which the complainant kept unlocked. A work bench was inside the garage. The complainant kept several tools on the work bench, including a mounted 10-inch, 15-pound miter chop saw. He did not keep the saw’s power cord wrapped around the unit.
On the evening of October 27, 2009, it began raining in East Meadow. The next day, at approximately 10:58 a.m., the complainant went to the side door of the garage. It was no longer raining at this point. The complainant noticed that the side door of the garage was ajar. When the complainant looked inside the garage, he observed a man whom he identified at trial as the defendant. The complainant had not given the defendant, who was a stranger, permission to enter the garage. The complainant noticed that the miter saw was no longer on the work bench, but rather, was on the floor of the garage. The *685 complainant observed the defendant “leaning over” the saw. Although there was a minor discrepancy in the complainant’s testimony about whether he observed the defendant wrapping the saw’s power cord around the unit, it is undisputed that, at this point, the cord was now wrapped around the unit. The complainant “yelled” at the defendant: “[W]hat are you doing in there?” In response, the defendant exited the garage through the side door, apologized to the complainant, got onto a bicycle, and pedaled away.
At 11:01 a.m., the complainant called the police to report the incident. Approximately four minutes later, Police Officer Jon Paloscio, who was in a nearby patrol car, received a radio transmission about the incident, as well as a description of the perpetrator. Soon thereafter, he observed the defendant riding a bicycle. Officer Paloscio stopped, and spoke with, the defendant. Officer Paloscio asked the defendant, who produced a photographic identification card listing a Hempstead residence, what he was doing in the neighborhood. The defendant replied that he “just came back from” the Nassau County Medical Center. Officer Paloscio, who realized that the defendant was actually riding his bicycle towards the Nassau County Medical Center, became more suspicious that the defendant was the man who was reported to have been inside the garage.
Another police officer transported the complainant to Officer Paloscio and the defendant. The complainant then identified the defendant as the man who had been inside the garage. Officer Paloscio then arrested the defendant.
The defendant did not testify on his own behalf, nor did he present any evidence.
On summation, defense counsel argued that the evidence showed that when the defendant entered the garage, he did not have the intent to commit a crime therein. Rather, defense counsel contended that the evidence showed that the defendant was “just a homeless guy trying to get out of the rain,” and was “looking for shelter from the storm.”
The trial court submitted the crime of burglary in the third degree to the jury. The trial court also submitted, as a lesser-included offense, the crime of criminal trespass in the third degree. The defendant was convicted of burglary in the third degree.
The trial court properly charged the jury that a person is guilty of burglary in the third degree “when he knowingly enters ... a building with intent to commit a crime therein” (Penal Law § 140.20). On appeal, the defendant contends, inter alia, that the evidence was legally insufficient to support the *686 jury’s implicit finding that at the time he entered the garage, he had an intent to commit a crime therein. Although the defendant’s legal sufficiency argument is rendered academic by the majority’s determination, I note that the argument is unpreserved for appellate review (see CPL 470.05 [2]), because defense counsel merely made a generalized motion to dismiss at the close of the People’s case (see People v Hodges, 257 AD2d 630 [1999]; People v McCrea, 194 AD2d 742 [1993]; People v Webber, 184 AD2d 540 [1992]). In any event, the argument is without merit, because when viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621 [1983]), the jury could rationally find that at the time the defendant entered the garage, he intended to commit a crime therein, specifically, larceny.
Oftentimes, there is no direct evidence of a defendant’s intent to commit a crime at the time the defendant enters a building (see People v Giannizzero, 209 AD2d 635, 636 [1994]). Indeed, a defendant will “rarely . . . express [ ]” such an intent (People v Jackson, 171 AD2d 813, 813 [1991]). However, that intent may be established by proof of the defendant’s conduct and other facts and circumstances (see People v Mackey, 49 NY2d 274, 279 [1980]). Here, the defendant’s conduct and certain other facts and circumstances provided a rational basis for the jury to infer that the defendant had a larcenous intent when he entered the garage.
Evidence that a defendant handled someone else’s property while inside a building he unlawfully entered may support a finding that at the time he entered the building, he intended to commit a crime therein (see People v McCrea, 194 AD2d at 743-744; People v Agostinello, 191 AD2d 639 [1993]; People v Ryan, 180 AD2d 769 [1992]). Here, there was evidence supporting the inference that the defendant handled the complainant’s property while inside the garage. In this regard, evidence supported the inference that the defendant, who was found “leaning” over a miter saw on the floor, had removed the 15-pound saw from its mounting on a work bench, placed the miter saw on the floor, and wrapped the saw’s power cord around the unit (see People v Santana, 143 AD2d 207 [1988]).
Evidence that a defendant who unlawfully entered a building gave false information when confronted by the police may also support a finding that at the time he entered the building, he intended to commit a crime therein (see People v McCrea, 194 AD2d at 743-744). Here, there was evidence that when the defendant was confronted by Officer Paloscio soon after the incident, he gave Officer Paloscio false information. In this *687 regard, although the defendant had been traveling towards the Nassau County Medical Center, he told Officer Paloscio that he was coining from the Nassau County Medical Center.
Finally, if a defendant who unlawfully entered a building gave or gives an “improbable excuse” for entering the building, this circumstance may also support a finding that at the time he or she entered the building, he or she intended to commit a crime therein (People v Monge, 248 AD2d 558, 559 [1998]; see People v Diaz, 53 AD3d 504, 505 [2008]; People v Williams, 221 AD2d 673 [1995]; People v Figueroa, 167 AD2d 555 [1990]; People v Giles, 161 AD2d 663 [1990]). Here, the defendant’s excuse for entering the garage — as advanced by defense counsel — was that he was a homeless person seeking shelter from the rain. However, there was ample evidence from which the jury could rationally reject that excuse for entering the garage. Aside from the circumstances discussed above, which supported the conclusion that the defendant intended to commit a larceny at the time he entered the garage, it is crucial to note that the defendant remained inside the garage after it stopped raining.
Turning now to the issue of whether the jury verdict was against the weight of the evidence, as the majority notes, weight-of-the-evidence review requires this Court “first to determine whether an acquittal would not have been unreasonable” (People v Danielson, 9 NY3d at 348). Here, an acquittal of the crime of burglary in the third degree would not have been unreasonable. Indeed, a finding that, at the time the defendant entered the garage, he did not intend to commit a crime therein, would not have been unreasonable. In this regard, certain circumstances might make it seem plausible that he truly was homeless, and, at the time he entered the garage, merely intended to get out of the rain. For example, it had been raining on the morning of the incident. Moreover, nothing was actually removed from the garage.
Upon finding that an acquittal would not have been unreasonable, this Court must “weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions” (id. at 348). “Based on the weight of the credible evidence,” this Court must then “decide[ ] whether the jury was justified in finding the defendant guilty beyond a reasonable doubt” (id. at 348; see People v Mateo, 2 NY3d at 410).
Keeping in mind that this Court should be careful not to substitute its judgment for that of the jury’s (see People v Romero, 7 NY3d 633, 644 [2006]; People v Bleakley, 69 NY2d 490, 495 [1987]), I conclude, unlike the majority, that the jury *688 was “justified” in finding that, at the time the defendant entered the garage, he intended to commit a crime therein. This is because it was fair for the jury, which was not bound to accept the defendant’s claimed purpose for entering the garage (see People v Giannizzero, 209 AD2d at 636; People v Giles, 161 AD2d at 663), to reject the defendant’s assertion that he was a homeless person seeking shelter from the rain and did not intend to steal anything from the garage. After all, as discussed above, there was ample evidence from which the jury could rationally reject that explanation. Furthermore, it should be pointed out that there was no evidence at trial establishing that the defendant, who possessed an identification card indicating that he had a residence, was actually homeless. Rather, Officer Paloscio merely testified that the defendant — who did not testify or put on a defense case — told him that he was homeless.
In summary, this case is not one where a jury rejected a defendant’s “persuasive . . . explanation” for his unlawful entry into a building and, hence, is not a case warranting the exercise of this Court’s factual review power to vacate a conviction (People v Perpepaj, 249 AD2d 223, 225 [1998]). For that reason, and because the defendant’s remaining contentions are without merit, I would affirm the defendant’s judgment of conviction.