■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOIS LUBRANO, Appellant. [985 NYS2d 754]—

Stein, J. Appeal from a judgment of the County Court of Ulster County (Williams, J,), rendered August 14, 2012, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, attempted assault in the first degree, criminal possession of a weapon in the fourth degree and criminal mischief in the fourth degree.

On an evening in June 2011, defendant, while inside the home she shared with the victim (her mother), aimed a shotgun at the victim, threatened her, placed the shotgun to the victim's head and ultimately fired one shot, fortunately missing her. After the victim escaped to a neighbor's house, a 911 call was made and the State Police responded to the scene. During the standoff that ensued, State Trooper Thomas Fortuna repeatedly called defendant—who remained inside the home—on the telephone. Although defendant hung up many times without speaking to Fortuna, she also made certain oral statements to him. Ultimately, defendant was apprehended inside her home and was arrested; the gun was discovered the following day outside the home. Defendant was subsequently charged by indictment

with attempted murder in the second degree, attempted assault in the first degree, criminal mischief in the third degree, criminal possession of a weapon in the fourth degree and criminal mischief in the fourth degree. After a jury trial, defendant was found guilty of all charges except criminal mischief in the third degree and was sentenced to various concurrent prison terms, the longest of which was 18 years, plus five years of postrelease supervision. Defendant now appeals, and we affirm.

We reject defendant's claim that the oral statements she made over the telephone to Fortuna during the standoff should have been suppressed because the police lacked probable cause to interrogate her. Fortuna testified at the suppression hearing that he arrived at the scene with his partner. His partner spoke to the victim, who told him that, in the course of a domestic dispute, her daughter had fired a shotgun round at her and this information was relayed to Fortuna. Under the fellow officer rule, Fortuna was entitled to rely on the information he received from his partner that was obtained from the victim (*see People v Ketcham*, 93 NY2d 416, 419-420 [1999]; *People v Ramirez-Portoreal*, 88 NY2d 99, 113 [1996]; *People v Parker*, 84 AD3d 1508, 1509 [2011], *lv denied* 18 NY3d 927 [2012]; *People v Bell*, 5 AD3d 858, 859 [2004]), who, as an " 'identified citizen informant, . . . is presumed to be personally reliable' " (*People v Bell*, 5 AD3d at 860, quoting *People v Parris*, 83 NY2d 342, 349 [1994]; *see People v Vanness*, 106 AD3d 1262, 1264 [2013], *lv denied* 22 NY3d 1044 [2013]). Thus, this evidence was sufficient to meet the People's burden of establishing that the police had probable cause to believe that a crime had been committed when they questioned defendant.

We are also unpersuaded by defendant's argument that her oral statements should have been suppressed because they were the product of a custodial interrogation conducted in the absence of *Miranda* warnings.[1] The majority of the challenged statements were made by defendant to Fortuna over the telephone while she was in her home during the standoff.[2] The purpose of the questions posed to defendant by Fortuna during this time was to quell the volatile situation and to determine the location of the weapon, not to elicit incriminating evidence (*see People v Sanchez*, 255 AD2d 614, 615 [1998], *lv denied* 92

---

**1.** It is not evident from the record which, if any, of the challenged statements were actually admitted at trial.

**2.** After Fortuna went into defendant's residence to arrest her, defendant made a statement with respect to the location of the gun. However, that statement was not made as a result of any interrogation; rather, defendant made the statement after Fortuna's supervisor asked the other troopers in the room whether the gun had been located.

NY2d 1053 [1999]). The questioning, therefore, fell squarely within the public safety exception to *Miranda*, as it was aimed at minimizing risks to the police officers and the general public (*see New York v Quarles*, 467 US 649, 655-656 [1984]; *People v Gause*, 50 AD3d 1392, 1394 [2008]). Thus, regardless of whether defendant was, as she asserts, in custody during the standoff (*see generally People v Bower*, 27 AD3d 1122, 1123 [2006], *lv denied* 6 NY3d 892 [2006]; *People v Scott*, 269 AD2d 96, 98 [2000], *lv denied* 95 NY2d 892 [2000]; *cf. People v Simpson*, 235 AD2d 960, 962 [1997], *lv denied* 89 NY2d 1100 [1997]), suppression of her statements was not required by the failure to apprise her of her *Miranda* rights (*see People v Simpson*, 235 AD2d at 961-962).

We find no error in County Court's determination to permit the People to elicit certain testimony concerning defendant's prior bad acts, including threats made to the victim. In addition to providing background as to the relationship between defendant and the victim, such evidence was relevant to issues other than propensity, such as defendant's intent and motive, as well as the absence of mistake or accident with regard to defendant's attempt to kill or physically injure the victim (*see People v Burkett*, 101 AD3d 1468, 1470 [2012], *lv denied* 20 NY3d 1096 [2013]; *People v Blond*, 96 AD3d 1149, 1150 [2012], *lv denied* 19 NY3d 1101 [2012]; *People v Leonard*, 83 AD3d 1113, 1116-1117 [2011], *affd* 19 NY3d 323 [2012]). In allowing some, but not all, of the proffered evidence, County Court properly balanced its probative value and its prejudicial nature (*see People v Burkett*, 101 AD3d at 1471; *People v Blond*, 96 AD3d at 1150; *compare People v Brown*, 114 AD3d 1017, 1020 [2014]). Moreover, the court minimized any prejudice to defendant by giving the jury contemporaneous limiting instructions, which were reiterated before the jury deliberated (*see People v Kidd*, 112 AD3d 994, 996 [2013]; *People v Burkett*, 101 AD3d at 1470).

Defendant's claim of ineffective assistance of counsel is also unavailing. While defendant now challenges her counsel's failure to pursue extreme emotional disturbance as an affirmative defense, it is evident from the record that this was a deliberate and calculated decision made by counsel with defendant's input and that counsel, instead, chose to challenge the People's proof regarding defendant's intent.[3] That strategy would have been contradictory to an extreme emotional disturbance defense (*see People v Underdue*, 89 AD3d 1132, 1134 [2011], *lv denied* 19

---

**3.** In fact, defense counsel stated on the record that he had no intention of raising a psychiatric defense and that defendant had agreed that such a defense would not be pursued.

NY3d 969 [2012]), which does not negate the element of intent (*see People v Ross*, 34 AD3d 1124, 1125-1126 [2006], *lv denied* 8 NY3d 884 [2007]). Moreover, defendant has not established the absence of any legitimate explanation for pursuing the chosen trial strategy and " 'counsel's efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective' " (*People v Thomas*, 105 AD3d 1068, 1071 [2013], *lv denied* 21 NY3d 1010 [2013], quoting *People v Benevento*, 91 NY2d 708, 712 [1998]; *see People v Underdue*, 89 AD3d at 1134). Finally, our review of the record in its totality establishes that defendant received meaningful representation (*see People v Caban*, 5 NY3d 143, 152 [2005]; *People v Thomas*, 105 AD3d at 1071; *People v Underdue*, 89 AD3d at 1134).

Lahtinen, J.P., Garry and Rose, JJ., concur. Ordered that the judgment is affirmed.

