■ The People of the State of New York, Respondent, v Anthony Matos, Appellant. (Appeal No. 1.) The People of the State of New York, Respondent, v Jason Matos, Appellant. (Appeal No. 2.) The People of the State of New York, Respondent, v Lee Taylor, Appellant. (Appeal No. 3.) [21 NYS3d 267]—

Appeals (1) by the defendant Anthony Matos from a judgment of the Supreme Court, Queens County (Aloise, J.), rendered August 3, 2011, convicting him of manslaughter in the first degree, gang assault in the first degree, and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence; (2) by the defendant Jason Matos from a judgment of the same court, rendered August 3, 2011, convicting him of gang assault in the second degree, upon a jury verdict, and imposing sentence; and (3) by the defendant Lee Taylor from a judgment of the same court, rendered August 3, 2011, convicting him of gang assault in the second degree, upon a jury verdict, and imposing sentence. The appeal by the defendant Anthony Matos brings up for review the denial, after a hearing, of his motion to suppress his statements to law enforcement officials.

Ordered that the judgments are affirmed.

In the early morning hours of June 20, 2007, the defendants Anthony Matos (hereinafter Anthony), Jason Matos (hereinafter Jason), and Lee Taylor (hereinafter Taylor) (hereinafter collectively Anthony's group), along with about a dozen other friends, were at Riviera Club (hereinafter the club), in Astoria, Queens. A second group, including Jason Brown (hereinafter Brown) and five or six others (hereinafter collectively Brown's group), was seated nearby. Ultimately, a fight broke out between members of Anthony's group and Brown's group. The club's security personnel broke up the fight, and escorted Brown's group out through a side door while Anthony's group was briefly detained. Anthony's group was permitted to leave through the front entrance a few minutes later, but Brown and his group had come around to the front of the club and, when Anthony's group exited the club, the fight recommenced. Security again attempted to stop the fight, but the situation quickly degenerated into what one security employee described as a "mêlée." During this fight, Brown was stabbed, stomped

on, and left in the street. Brown later died as a result of his injuries.

Anthony, Jason, and Taylor, among others, were subsequently indicted on, inter alia, charges of manslaughter in the first degree (Anthony and Jason), gang assault in the first degree (Anthony, Jason, and Taylor), and criminal possession of a weapon in the fourth degree (Anthony and Jason). After a combined *Wade/Huntley* hearing (*see United States v Wade*, 388 US 218 [1967]; *People v Huntley*, 15 NY2d 72 [1965]), the Supreme Court determined, inter alia, that certain statements made by Anthony while he was in custody outside of the presence of his attorney were not the product of police interrogation and, therefore, were not subject to suppression.

Anthony, Jason, and Taylor were tried together. At trial, Gilbert Martinez (hereinafter Martinez), another member of Anthony's group, testified that on the night of the incident, the last person he saw near Brown was Anthony, who was crouched over Brown. Later that same night, Anthony admitted to him that "he stabbed [Brown] twice." The jury also viewed substantial portions of the club's security video, which depicted both the interior and exterior of the premises. The jury returned a verdict convicting Anthony of manslaughter in the first degree, gang assault first degree, and criminal possession of a weapon fourth degree. Jason and Taylor were both convicted of gang assault in the second degree.

Contrary to the defendants' contention, the evidence adduced at trial, viewed in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621 [1983]), was legally sufficient to support the convictions. The testimony given by Martinez, particularly in combination with evidence from the club's security videos and the testimony of other witnesses, was adequate to establish the involvement of each of the defendants in the fight which led to Brown's death, and that they acted in concert with one another so as to support the gang assault charges against each of the defendants. The trial evidence was also legally sufficient to support Anthony's convictions of manslaughter in the first degree and criminal possession of a weapon in the fourth degree (*see People v Abraham*, 22 NY3d 140, 146 [2013]; *People v Cintron*, 95 NY2d 329, 332 [2000]; *People v Taylor*, 94 NY2d 910, 911 [2000]). "The mere fact that the evidence is subject to an interpretation different from that found by the jury does not mean the People failed to prove their case beyond a reasonable doubt" (*People v Taxiarhopoulos*, 172 AD2d 783, 784 [1991]).

Additionally, and contrary to the opinion of our dissenting

colleague, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]; *People v Saunders*, 127 AD3d 1111, 1112 [2015]). "Upon [a] defendant's request, the Appellate Division must conduct a weight of the evidence review," and thus, "a defendant will be given one appellate review of adverse factual findings" (*People v Danielson*, 9 NY3d 342, 348 [2007]; *see People v Curry*, 112 AD3d 843, 844 [2013]; *see also* Arthur Karger, Powers of the New York Court of Appeals § 21:1 at 744 [3d ed rev 2005]). If a finding in favor of the defendant would not have been unreasonable, then this Court "must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" (*People v Danielson*, 9 NY3d at 348). "Once this Court conducts such an analysis, it must then decide whether the verdict finding the defendant guilty beyond a reasonable doubt was warranted" (*People v Curry*, 112 AD3d at 844). "Essentially," this Court "sits as a thirteenth juror and decides which facts were proven at trial" (*People v Danielson*, 9 NY3d at 348, citing *Tibbs v Florida*, 457 US 31, 42 [1982]). If it appears that the factfinder failed to give the evidence the weight it should have been accorded, then this Court may set aside the verdict and dismiss the accusatory instrument or any reversed count thereof (*see* CPL 470.20 [5]; *People v Romero*, 7 NY3d at 643-644; *People v Mateo*, 2 NY3d 383, 410 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]).

Here, Martinez's testimony was critical to the jury's conclusion that Anthony was culpable in Brown's death. The dissent contends that the cooperation agreement between Martinez and the prosecution "provided Martinez with a strong incentive to fabricate his testimony," and that the inconsistencies between Martinez's out-of-court statements and his trial testimony compel the conclusion that Martinez was not credible. However, the fact of the cooperation agreement was disclosed to the jury, and merely because a witness enters into such an agreement does not render his or her testimony incredible (*see People v Dennis*, 223 AD2d 599 [1996]). Furthermore, "when [a] jury, acting within its rightful province of determining credibility, weighing evidence and drawing justifiable inferences from proven facts, has an objective, rational basis for resolving beyond a reasonable doubt the contradictory inculpating and exculpating versions of the events given by the witness, its determination of guilt is [not] based on 'impermissible speculation' and should be upheld" (*People v Fratello*, 92 NY2d 565, 573-574 [1998], quoting *People v Jackson*, 65 NY2d 265, 272 [1985]). Here, there was an objective rational basis for the

jury's conclusion. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d at 410).

In this regard, we note that the video evidence captured from security cameras which was presented to the jury is of poor quality. However, the jury had the benefit of seeing this evidence in the context of contemporaneous testimony from the individuals who were portrayed in the videos. Accordingly, the verdict was not against the weight of the evidence (*see generally People v Romero*, 7 NY3d at 643-644; *People v Cahill*, 2 NY3d 14, 58 [2003]).

The defendants also argue that the Supreme Court erred in its instructions regarding the phrase "acting in concert." Although the initial instructions to the jury on this issue may have been misleading, in response to the defendants' objections, the court provided the clarification they had requested, and thus, effectively ameliorated any error. Contrary to the defendants' contention, the court's subsequent response to a note from the jury seeking clarification did not change the corrected instruction or otherwise constructively amend the indictment (*see generally People v Sanchez*, 84 NY2d 440, 445-446 [1994]; *People v Hong Wu*, 81 AD3d 849, 849-850 [2011]). The remainder of the defendants' objection in this regard is unpreserved for appellate review and does not warrant the invocation of this Court's interest of justice jurisdiction (*see* CPL 470.15 [6] [a]; *People v Lopez*, 200 AD2d 767, 768 [1994]).

Contrary to the defendants' contention, the Supreme Court did not improperly permit the prosecutor to question Martinez about prior consistent statements. During cross-examination, Anthony's attorney questioned Martinez extensively about the inconsistencies between his statements to the police and his grand jury and trial testimony, and the other defendants' trial attorneys did not object. Since Anthony's attorney opened the door, the prosecutor was entitled to further explore Martinez's statements during her redirect examination (*see People v Melendez*, 51 AD3d 1040, 1040-1041 [2008]; *People v Van Ness*, 43 AD3d 553, 555 [2007]; *People v Williams*, 43 AD3d 414 [2007]; *see also People v Melendez*, 55 NY2d 445, 451-452 [1982]).

Nor was it error for the prosecutor to make reference in her summation to the defendants' familial relationships with one another and with others in their group. Such references constituted fair comment upon the evidence or a fair response to the defense summation (*see People v Ashwal*, 39 NY2d 105, 109 [1976]; *People v White*, 5 AD3d 511, 511 [2004]).

The Supreme Court also correctly denied suppression of statements which Anthony made to the police outside the presence of his attorney. A defendant who is represented by counsel may not be questioned outside the presence of counsel (*see People v Burdo*, 91 NY2d 146, 149-150 [1997]; *People v Rogers*, 48 NY2d 167, 169 [1979]). Here, however, the detective's statements that he believed another suspect might be in Anthony's home, and that the investigation could be closed if that suspect were apprehended, were not " 'reasonably likely to elicit an incriminating response' " (*People v Dunn*, 195 AD2d 240, 244 [1994] *affd* 85 NY2d 956 [1995], quoting *Rhode Island v Innis*, 446 US 291, 301 [1980]). Therefore, such statements were not "the functional equivalent of custodial interrogation," and Anthony's responses thereto were not subject to suppression (*People v Davis*, 32 AD3d 445, 446 [2006]; *see People v Higgins*, 124 AD3d 929, 932 [2015]; *cf. People v Lubrano*, 117 AD3d 1239, 1240 n 2 [2014]; *People v Ziegler*, 78 AD3d 545, 546 [2010]).

The sentences imposed were not excessive (*see* Penal Law §§ 70.02 [3] [a]; 125.20; *see e.g. People v Melendez*, 71 AD3d 1166, 1167 [2010]; *People v Gratton*, 51 AD3d 1219, 1221 [2008]).

The defendants' remaining contention is unpreserved for appellate review (*see People v Marcus*, 112 AD3d 652, 653 [2013]; *People v Rogers*, 92 AD3d 903, 904 [2012]; *People v Montalvo*, 34 AD3d 600, 601 [2006]) and does not warrant the invocation of this Court's interest of justice jurisdiction (*see* CPL 470.15 [6] [a]; *People v Pagan*, 2 AD3d 879 [2003]). Balkin, J.P., Austin and Sgroi, JJ., concur.

Hall, J., concurs in part, and dissents in part, and votes to modify the judgment as to the defendant Anthony Matos, on the law and the facts, by vacating the convictions of manslaughter in the first degree and criminal possession of a weapon in the fourth degree, vacating the sentences imposed thereon, and dismissing those counts of the indictment, and by reducing the conviction of gang assault in the first degree to gang assault in the second degree, vacating the sentence imposed under count two of the indictment, and remitting the matter to the Supreme Court, Queens County, for sentencing on the conviction of gang assault in the second degree, with the following memorandum: I agree with much of the determination made by the majority, except for the determination that convictions of the defendant Anthony Matos (hereinafter Anthony) of manslaughter in the first degree, gang assault in the first degree, and criminal possession of a weapon in the fourth degree were supported by the

weight of the evidence. Accordingly, I respectfully dissent, in part.

"Upon defendant's request, the Appellate Division must conduct a weight of the evidence review," and thus, "a defendant will be given one appellate review of adverse factual findings" (*People v Danielson*, 9 NY3d 342, 348 [2007]; *see* CPL 470.15 [5]). If a finding in favor of the defendant would not have been unreasonable, then "the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" (*People v Danielson*, 9 NY3d at 348). Once the Court conducts such an analysis, it must then decide whether the verdict finding the defendant guilty beyond a reasonable doubt was warranted. If it appears that the factfinder " 'failed to give the evidence the weight it should be accorded, then the appellate court may set aside the verdict' " (*People v Mateo*, 2 NY3d 383, 410 [2004], quoting *People v Bleakley*, 69 NY2d 490, 495 [1987]).

I recognize that, in fulfilling this Court's responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]), this Court will nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d at 410). However, upon my review of the record, I find that Anthony's convictions of manslaughter in the first degree, gang assault in the first degree, and criminal possession of a weapon in the fourth degree are against the weight of the evidence.

An acquittal on the charges of manslaughter in the first degree, gang assault in the first degree, and criminal possession of a weapon in the fourth degree against Anthony would not have been unreasonable based on the evidence presented. Moreover, in my view, the jury failed to accord the evidence the weight it should have been accorded (*see People v Romero*, 7 NY3d 633 [2006]). While the evidence presented at trial demonstrated that Anthony was involved in the fight, the only evidence connecting Anthony to the stabbing of Jason Brown was the testimony of Gilbert Martinez. However, I find that Martinez's testimony in this regard is not credible.

Martinez, who was originally charged with manslaughter and gang assault for his role in Brown's death, entered into a cooperation agreement with the prosecution and, in exchange for his testimony, received a probationary sentence after pleading guilty to criminal facilitation in the fourth degree, a class A misdemeanor (*see* Penal Law § 115.00). This cooperation agree-

ment provided Martinez with a strong incentive to fabricate his testimony and place the blame for Brown's stabbing on one of his cohorts. While this motive to fabricate does not, standing alone, render Martinez unworthy of belief, other factors in combination with this motive lead me to the conclusion that Martinez's testimony is not credible.

On cross-examination, Martinez stated that he was not carrying a knife on the night in question. However, at the police precinct, Martinez initialed a Question and Answer Sheet indicating that he was carrying a Swiss army knife in his front pants pocket, and that he usually carries a knife for protection. Further, although Martinez testified at trial that he saw Anthony crouched over Brown's body, he never mentioned this to the police or prosecutors at any time from 2007 to 2009. Moreover, in contrast to his trial testimony, Martinez did not tell the grand jury that Anthony admitted to stabbing Brown. Martinez told the grand jury that he did not see the fight break out in the club or who started it, and did not know "which guy[ ] got stabbed," despite so testifying at trial. In addition, while Martinez testified at trial that Anthony exited the club and threw a punch at Brown, he did not so testify before the grand jury.

Furthermore, the video evidence captured from security cameras, which is of poor quality, does not support a finding that Anthony stabbed Brown. Indeed, even viewing the videos in connection with the testimony adduced by the People at trial, it is difficult to discern the events depicted because the videos are of such poor quality. Neither the videos, nor the testimony of the People's witnesses pertaining to the videos, show that Anthony stabbed Brown.

Consequently, the only evidence connecting Anthony to Brown's stabbing was Martinez's testimony that after the subject incident, Anthony admitted to him that he stabbed Brown twice. Similarly, the only evidence that Anthony possessed a weapon came from Martinez's testimony. There is no forensic or other evidence in this record to corroborate Martinez's testimony that Anthony admitted that he stabbed Brown. Under these circumstances, Martinez's testimony does not credibly support Anthony's convictions of manslaughter in the first degree and criminal possession of a weapon in the fourth degree (*see People v Nisthalal*, 87 AD3d 702, 705 [2011]; *People v Gonzalez*, 84 AD3d 1400 [2011]; *People v Zephyrin*, 52 AD3d 543 [2008]). Accordingly, it is my opinion that Anthony's convictions of manslaughter in the first degree and criminal possession of a weapon in the fourth degree are against the weight of the evidence (*see People v Nisthalal*, 87 AD3d at 705).

In light of my finding that Martinez's testimony was incredible, I find that the verdict on the count charging Anthony with gang assault in the first degree was against the weight of the evidence. Without any credible evidence to establish that Anthony possessed a knife, the weight of the evidence fails to support a finding that Anthony acted with "intent to cause serious physical injury" to Brown (Penal Law § 120.07). Nevertheless, the weight of the credible evidence does support a finding that Anthony acted with "intent to cause physical injury" to Brown and, thus, that Anthony committed the lesser-included offense of gang assault in the second degree (Penal Law § 120.06). Consequently, I would reduce Anthony's conviction of gang assault in the first degree to gang assault in the second degree, vacate the sentence imposed under count two of the indictment, and remit the matter to the Supreme Court, Queens County, for sentencing on Anthony's conviction of gang assault in the second degree (*see* CPL 470.15 [5]; *People v Freeman*, 98 AD3d 682, 683-684 [2012]).