[1 NE3d 797, 978 NYS2d 723]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AKIVA DANIEL ABRAHAM, Appellant.

Argued October 15, 2013; decided November 26, 2013

## POINTS OF COUNSEL

*Jonathan S. Fishbein,* Delmar, for appellant. I. Even when viewed in a light most favorable to the prosecution, the record evidence was insufficient to establish appellant's guilt of second-degree insurance fraud as a matter of law. (*People v Bleakley,* 69 NY2d 490; *People v Fitzgerald,* 156 NY 253; *People v Lewis,* 275 NY 33; *People v Marin,* 65 NY2d 741; *People v Sanchez,* 61 NY2d 1022; *People v Way,* 59 NY2d 361; *People v Bearden,* 290 NY 478; *People v Barnes,* 50 NY2d 375; *People v Cushner,* 46 AD3d 1121; *People v Guarino,* 56 AD2d 638.) II. The trial court erred by submitting the insurance fraud charge to the jury or, in the alternative, by failing to instruct the jury to stop deliberating after it acquitted appellant of arson. (*People v Chase,* 299 AD2d 597; *People v Wallender,* 27 AD3d 955; *People v Yarrell,* 75 NY2d 828; *People v Clayton,* 17 AD3d 706; *People v Whipple,* 276 AD2d 827; *People v Horne,* 97 NY2d 404; *People v Mendoza,* 300 AD2d 824, 99 NY2d 617.) III. The prosecution violated appellant's due process rights by arguing outside the four corners of the evidence and by making false statements to the trial court, the Appellate Division, and this Court. (*People v Ashwal,* 39 NY2d 105; *People v Fisher,* 18 NY3d 964; *People v Chin,* 138 AD2d 389; *People v Downing,* 112 AD2d 24; *People v Trinidad,* 59 NY2d 820; *People v Lozada,* 104 AD2d 663; *People v Cobb,* 104 AD2d 656; *People v Libbett,* 101 AD2d 705; *Napue v Illinois,* 360 US 264; *People v Harris,* 98 NY2d 452.)

*P. David Soares, District Attorney,* Albany (*Christopher D. Horn* of counsel), for respondent. I. Defendant's conviction for insurance fraud in the second degree was supported by legally sufficient evidence. (*People v Williams,* 84 NY2d 925; *People v Danielson,* 9 NY3d 342; *People v Wong,* 81 NY2d 600; *People v Trimm,* 252 AD2d 673; *People v Khan,* 18 NY3d 535; *People v Boothe,* 16 NY3d 195; *People v Aksoy,* 84 NY2d 912; *People v Chase,* 299 AD2d 597, 99 NY2d 613; *People v Cabey,* 85 NY2d 417; *People v Roberts,* 63 AD3d 1294.) II. The trial court properly submitted the insurance fraud charge to the jury and properly declined to amend the verdict sheet as defendant requested. (*People v Alfaro,* 108 AD2d 517; *People v Pagan,* 87 AD3d 1181; *People v Michael,* 210 AD2d 874; *People v Amar,* 134 AD2d 601.)

III. Prosecutorial misconduct did not deprive defendant of a fair trial. (*People v Tarantola*, 178 AD2d 768; *People v De Vito*, 21 AD3d 696; *People v Demming*, 116 AD2d 886; *Williams v Brooklyn El. R.R. Co.*, 126 NY 96; *People v Mull*, 167 NY 247; *People v Benham*, 160 NY 402; *People v Priori*, 164 NY 459; *People v Ashwal*, 39 NY2d 105.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

The primary issue in this case is whether factual inconsistency in a jury verdict acquitting a defendant of one count but convicting him of another renders the record evidence legally insufficient to support the conviction. We hold that it does not.

On April 16, 2009, defendant Akiva Abraham's limited liability company, 1st Call, LLC, acquired a property in Colonie on which stood an abandoned night club known as Saratoga Winners. The purchase price was only one dollar, apparently because the property was encumbered by a bank lien.

On the same day, Parel Road, LLC, originated a mortgage in the amount of $475,000 to 1st Call for the purchase of the property. Parel Road never transferred any money to 1st Call. And at the time of the transaction, Parel Road had about $25 in its checking account. Whether Parel Road owned other assets was not established at trial.

Also on the day of the purchase, defendant signed a property insurance contract with an insurance agent at Shank & Falvey, securing coverage in the amount of $475,000. The policy became effective on April 20, 2009.

On April 30, 2009, two weeks after the purchase, Saratoga Winners burned to the ground. Once fire crews had extinguished the flames, fire investigators searched for the origin of the blaze. A trained dog identified the presence of accelerants both outside and inside the destroyed building. Investigators took samples at the locations the dog identified and sent them to the New York State Police Forensic Investigation Center. They tested positive for strong concentrations of medium petroleum distillate of the kind that is used to light lamps, such as "Klean Heat" or "Tiki" torch fuel. The presence of the accelerants combined with the lack of any fire hazards in the building caused investigators to rule out all possible causes for the fire except arson.

Defendant reported the loss to his insurance company and caused a property loss notice to be filed. He told the company that he did not know the cause of the fire.

Investigators interviewed defendant on two occasions after the fire. The interviews were recorded and played for the jury at trial. During the interviews, defendant gave elaborate explanations of the financial transactions accompanying his purchase of the property and how he intended to profit from flipping it. But it was revealed at trial that the company that held the mortgage, Parel Road, actually was his father's 401(k), which defendant controlled.

Investigators discovered that on April 27, 2009, three days before the fire, defendant had purchased four gallons of Tiki torch fuel (a medium petroleum distillate) and two nine-pack boxes of Duraflame logs at Home Depot. Police arrested defendant on May 15, 2009 and conducted a search of his car and home. Tests on one of the floor mats in defendant's car revealed an "abundance" of a medium petroleum distillate.* A search of a shed behind defendant's home revealed four empty one gallon bottles of Tiki torch fuel and two empty Duraflame boxes. Investigators discovered Tiki torches in the shed as well. Also at defendant's home were a kerosene canister and a gas can. The officers did not seize either container, or check whether they contained Tiki torch fuel.

Defendant was charged with arson in the third degree, insurance fraud in the second degree, and reckless endangerment in the first degree. His first trial ended in a hung jury.

At his second trial, it came out that on at least two occasions, 1st Call had been unable to meet its payroll obligations. After the fire, defendant told a 1st Call employee that the fire "could be big for us."

The prosecution's theory of the case was that defendant needed money, obtained a fake mortgage to make it appear as though he intended to improve the property, obtained insurance in the amount of that mortgage, burned down the building, and lied about the cause of the fire to the insurance company to collect on the insurance. During opening and closing, the prosecution repeatedly referred to the mortgage as "fake" and "bogus." At closing, the defense objected, arguing that the prosecution had not proved that the mortgage was fake and thus was making false statements to the jury. The court overruled the objection.

---

* The chemical characteristics of the petroleum distillate found on the mat in defendant's car were not consistent with Tiki torch fuel, but instead were consistent with charcoal lighter fluid.

Before the charge was read to the jury, defense counsel asked the court to include a line in the verdict form instructing the jury to stop deliberating if it found defendant not guilty of arson. Defense counsel maintained that the only theory of insurance fraud charged in the indictment was that defendant had burned down his building and lied to the insurance company about the cause of the fire. Counsel argued that the prosecution's remarks about the "fake" mortgage made it possible that the jury could find defendant guilty of insurance fraud for lying about the mortgage, not the cause of the fire. The trial judge refused, saying that he knew of no authority in the Criminal Procedure Law that would permit such cessation of deliberations.

The jury found defendant guilty of insurance fraud in the second degree, but acquitted him of arson in the third degree and reckless endangerment in the first degree.

The Appellate Division affirmed the judgment, holding that there was sufficient evidence to support a finding that defendant concealed the cause of the fire from the insurance company (*People v Abraham*, 94 AD3d 1332, 1333 [3d Dept 2012]). It held also that the prosecution's references to the "fake" mortgage were not made in an attempt to introduce a new theory of liability, but were part of the prosecution's narrative, and were a fair comment on the evidence (*id.* at 1333-1334). A Judge of this Court granted defendant leave to appeal (19 NY3d 1100 [2012]).

Defendant argues that his conviction should be vacated because: (1) the record evidence is insufficient to establish his guilt of insurance fraud in the second degree; (2) the trial court erred by not instructing the jury to stop deliberating after it acquitted defendant of arson; and (3) the prosecution committed misconduct in summation and its arguments on appeal. None of these arguments is persuasive.

A person is guilty of insurance fraud in the second degree when he "commits a fraudulent insurance act and thereby wrongfully takes, obtains or withholds, or attempts to wrongfully take, obtain or withhold property with a value in excess of fifty thousand dollars" (Penal Law § 176.25). As relevant here, "[a] fraudulent insurance act is committed by any person who, knowingly and with intent to defraud presents [or] causes to be presented . . . any written statement as part of, or in support of . . . a claim for payment or other benefit" containing "materially false information" or concealing "information concerning" a material fact (Penal Law § 176.05 [1] [a], [b]).

The prosecution's theory of the case, as charged in the indictment, was that defendant obtained insurance on the property, burned down Saratoga Winners, lied to the insurance company about the cause of the fire, caused to be filed a property loss notice containing misstatements or concealing information about the cause of the fire, and thus wrongfully attempted to take funds in excess of $50,000.

Defendant argues that because the jury acquitted him of arson, the prosecution did not establish that he knew the cause of the fire or lied to the insurance company, and therefore the evidence is insufficient to support his conviction for insurance fraud. In other words, he claims that, in light of the prosecution's theory of the case, (1) the jury verdict is factually inconsistent, and therefore, (2) the evidence is legally insufficient to support his conviction.

A verdict is factually inconsistent where, in light of the evidence presented, an acquittal on one count is factually irreconcilable with a conviction on another count (*People v Muhammad*, 17 NY3d 532, 545 [2011]). Factual inconsistency— "which can be attributed to mistake, confusion, compromise or mercy—does not provide a reviewing court with the power to overturn a verdict" (*id.*; *see People v Tucker*, 55 NY2d 1, 7 [1981]; *and see People v Horne*, 97 NY2d 404, 413 [2002] ["'(I)t is imprudent to speculate concerning the factual determinations that underlay the verdict because what might appear to be an irrational verdict may actually constitute a jury's permissible exercise of mercy or leniency'"]). If a jury renders a factually inconsistent verdict, the trial court "can point out the apparent inconsistency to the jurors, issue further appropriate instructions and ask them to continue deliberations. But a failure to take such action would not be an abuse of discretion as a matter of law" (*Muhammad*, 17 NY3d at 545).

In contrast, a conviction not supported by legally sufficient evidence should be overturned. A conviction is legally insufficient where, viewing the record in the light most favorable to the prosecution, there is no "valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 349 [2007] [internal quotation marks omitted], quoting *People v Acosta*, 80 NY2d 665, 672 [1993]).

Factual inconsistency and legal insufficiency are analytically distinct. One may inform the other—i.e., in some instances,

a reviewing court may consider a jury's acquittal on one count in reviewing the record to determine if a factually inconsistent conviction on another count is supported by legally sufficient evidence (*see People v Rayam*, 94 NY2d 557, 563 n [2000] [noting "propriety of consideration of . . . acquittals in some instances on legal issues such as the sufficiency of the evidence"]; *see e.g. People v Yarrell*, 75 NY2d 828, 829 [1990]). But it does not follow that such factual inconsistency in the verdict renders the record evidence legally insufficient to support the conviction. Put another way, an acquittal is not a preclusive finding of any fact, in the same trial, that could have underlain the jury's determination.

■ Therefore, even assuming, as submitted by defendant, that the jury's verdict in this case presented a factual inconsistency, it does not affect the propriety of his conviction. But the question remains whether, viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence in the record that defendant committed insurance fraud in the second degree by causing a written statement concealing information about the cause of the fire to be filed in order to collect wrongfully on the policy. We conclude that there is.

Defendant's company, 1st Call, had been unable to make payroll on at least two occasions. 1st Call acquired the Saratoga Winners property at almost no cost. It then insured the property for $475,000. Defendant explained in his interviews with investigators that he intended to improve and flip the property with the funding from the mortgage from Parel Road. But Parel Road never transferred any money to 1st Call. About 10 days after purchasing the property, defendant bought four gallons of a medium petroleum distillate and 18 Duraflame logs. Days later, Saratoga Winners burned to the ground. Investigators found evidence of medium petroleum distillate both outside and inside the building. Two weeks after the fire, investigators found four empty gallon bottles of medium petroleum distillate at defendant's home. They also found empty Duraflame boxes, but none of the 18 Duraflame logs. Defendant reported the fire to his insurance company, but did not say that he had burned down the building, causing a property loss notice concealing material information to be filed in support of his claim.

Viewed together, this evidence is sufficient for a rational jury to conclude beyond a reasonable doubt that, in order to solve his financial problems, defendant lied about the cause of the fire to his insurance company in the property loss notice in an

effort to collect wrongfully on the policy, thereby committing insurance fraud in the second degree.

■ Defendant next argues that the trial court should have instructed the jury to stop deliberating after it acquitted defendant of arson. Whether or not the court had the authority to give such an instruction, it was not error to refuse defendant's request (*see Muhammad*, 17 NY3d at 545).

Defendant's final argument is that his conviction should be overturned because of prosecutorial misconduct. He claims that the prosecution knowingly misrepresented facts, most notably relating to the validity of the mortgage, to the jury and repeated those misrepresentations on appeal. The prosecution's remarks, however, were permissible comments on the evidence presented at trial (*see People v Ashwal*, 39 NY2d 105, 109 [1976] [explaining that prosecution is afforded the "widest latitude" to comment on evidence]).

Accordingly, the order of the Appellate Division should be affirmed.

PIGOTT, J. (dissenting). I would reverse the order of the Appellate Division. Without conceding that the evidence was legally sufficient to establish that defendant was guilty of insurance fraud, I would hold that the trial court committed reversible error by denying defendant's request to instruct the jury to stop deliberating if it found him not guilty of arson.

As the majority shows, the prosecution's theory of the case was that defendant himself burned down the abandoned night club. No evidence was introduced suggesting that defendant had any accomplice, and the jury was not instructed on accessorial liability. To avoid the possibility of the factually inconsistent verdict that I believe obtained in this case (*see also* majority op at 147), the trial court should have instructed the jury to stop deliberating if it acquitted defendant of arson.

Although a factually inconsistent verdict does not provide an appellate court with a justification for overturning a conviction (*see People v Muhammad*, 17 NY3d 532, 545 [2011]), such verdicts should be prevented when possible by a trial court, because they harbor irrationality. Here, by permitting the jury "to compromise, make mistakes, be confused or . . . extend mercy" (*Muhammad*, 17 NY3d at 544) and render a factually illogical verdict, the trial court deprived defendant of a fair trial in which the jury had to decide whether the People had proved, beyond a reasonable doubt, that defendant committed the

crimes of which he was accused in the manner specified in the indictment. Instead, the jury was invited to reject the prosecution's theory of the case and still find defendant guilty. The majority's summary rejection of defendant's challenge to the jury charge (*see* majority op at 148, citing *Muhammad*, 17 NY3d at 545) fails to explain why the trial court's refusal to give the requested instruction did not amount to reversible error.

Judges GRAFFEO, READ, SMITH, RIVERA and ABDUS-SALAAM concur with Chief Judge LIPPMAN; Judge PIGOTT dissents and votes to reverse in an opinion.

Order affirmed.