People v Nichols (2018 NY Slip Op 04502)





People v Nichols


2018 NY Slip Op 04502


Decided on June 15, 2018


Appellate Division, Fourth Department


NeMoyer, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 15, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, LINDLEY, NEMOYER, AND CURRAN, JJ.


1277 KA 15-00937

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JUSTIN M. NICHOLS, DEFENDANT-APPELLANT. 






REEVE BROWN PLLC, ROCHESTER (GUY A. TALIA OF COUNSEL), FOR DEFENDANT-APPELLANT.
BROOKS T. BAKER, DISTRICT ATTORNEY, BATH (JOHN C. TUNNEY OF COUNSEL), FOR RESPONDENT. 


NeMoyer, J.
 Appeal from a judgment of the Steuben County Court (Joseph W. Latham, J.), rendered October 31, 2014. The judgment convicted defendant, upon a jury verdict, of criminal contempt in the first degree and reckless endangerment in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously modified as a matter of discretion in the interest of justice by amending the order of protection and as modified the judgment is affirmed, and the matter is remitted to Steuben County Court for further proceedings in accordance with the following opinion by NeMoyer, J.:
This appeal presents a convenient opportunity to examine the murky relationship between factually inconsistent verdicts and legal sufficiency review in criminal cases. Excepting a minor technical problem with the final order of protection issued at sentencing, we see no error in the judgment appealed from.
FACTS
A grand jury indicted defendant on six counts arising out of a December 2013 altercation with his estranged wife in the Town of Cohocton, Steuben County. At the time of the altercation, defendant's wife had an order of protection against him issued by the Steuben County Family Court.
Because the interplay of the various counts is critical to this appeal, we will describe the indictment in some detail:
Count one charged defendant with criminal contempt in the first degree (Penal Law § 215.51 [b] [i]) and alleged that he, in violation of a "duly served order of protection, or such order of which he has actual knowledge because he was present in court when such order was issued," intentionally placed or attempted to place his wife in reasonable fear of physical injury, serious physical injury, or death by displaying a dangerous instrument, to wit, a metal pipe.
Count two charged defendant with criminal contempt in the first degree (§ 215.51 [b] [vi]) and alleged that he, by physical menace and in violation of a "duly served order of protection, or such order of which he has actual knowledge because he was present in court when such order was issued," intentionally placed or attempted to place his wife in reasonable fear of imminent serious physical injury.
Count three charged defendant with criminal possession of a weapon in the third degree (§ 265.02 [1]) and alleged that he, after having been previously convicted of a crime, possessed a dangerous or deadly instrument, to wit, a metal pipe, with intent to use [*2]it unlawfully against his wife.
Count four charged defendant with criminal mischief in the third degree (§ 145.05 [2]) and alleged that he intentionally damaged his wife's property in an amount exceeding $250.
Count five charged defendant with reckless endangerment in the second degree (§ 120.20) and alleged that he recklessly engaged in conduct which created a substantial risk of serious physical injury to his wife.
Count six charged defendant with menacing in the second degree (§ 120.14 [1]) and alleged that he intentionally placed or attempted to place his wife in reasonable fear of physical injury, serious physical injury, or death by displaying a dangerous instrument, to wit, a metal pipe.
At trial, a Family Court clerk testified about the underlying order of protection. The clerk, who personally prepared the order, testified that it was in effect in December 2013, and that it required defendant to refrain from, inter alia, criminal acts of assault, harassment, menacing, reckless endangerment, or any other criminal offense against his wife. The clerk testified that the order was labeled "Justin Nichols- PS in ct," which meant that it was "personally served in court" upon defendant; a box was also checked stating "Order personally served in Court upon party against whom order was issued." Although it was not signed by defendant, the order further stated, in multiple places, that both parties were present in court on the date of its issuance. The order of protection itself was admitted as an exhibit, and our review thereof confirms that the Family Court clerk accurately described the various notations and entries on the document.
Defendant's wife then testified about the altercation at issue. Despite the protective order, the wife explained that she and defendant got together at his residence to try and work things out. According to the wife, they did meth all night, and, in the morning, defendant asked to use her car to go to court on an unrelated incident; the wife refused. The wife testified that defendant then got angry, took "something long and metal," and threatened to smash either her head or the windows of her car. The wife then got into her car, but before she could drive away, defendant came out of the house and smashed the car's front windshield, its two driver-side windows, and its back windshield "with that long metal object." The wife then drove away. In short, the wife testified that defendant threatened her with a "long metal object" and that he used that object to knock out the windows of her car.
The jury ultimately convicted defendant on count two (criminal contempt/first for violating the order of protection by physical menace) and count five (reckless endangerment/second), but it acquitted him on the remaining counts. Defendant did not object to any factual inconsistency or repugnancy in the verdict before the jury was discharged.
County Court thereafter sentenced defendant, as a second felony offender, to an indeterminate term of 2 to 4 years' imprisonment on count two, and to a definite, one-year term of incarceration on count five. The sentences ran concurrently by operation of law (see Penal Law § 70.35). In addition, the court issued a final order of protection in the wife's favor, and it fixed the expiration date thereof at May 18, 2026. The court did not articulate, on the record, its reasons for issuing a final order of protection. Defendant did not object to the final order of protection on any ground.
Defendant now appeals.
DISCUSSION
I
Defendant lodges multiple challenges to the legal sufficiency and weight of the evidence underlying his two convictions (see generally People v Delamota, 18 NY3d 107, 113, 116-117 [2011]; People v Romero, 7 NY3d 633, 636-644 [2006]). Insofar as relevant here, a person is guilty of first-degree criminal contempt when, "in violation of a duly served order of protection, [*3]or such order of which [he or she] has actual knowledge because he or she was present in court when such order was issued, . . . [he or she] . . . by physical menace, intentionally places or attempts to place a person for whose protection such order was issued in reasonable fear of death, imminent serious physical injury or physical injury" (Penal Law § 215.51 [b] [vi]). Moreover, a "person is guilty of reckless endangerment in the second degree when he [or she] recklessly engages in conduct which creates a substantial risk of serious physical injury to another person" (§ 120.20). The jury was instructed consistently with these statutory provisions.
A
Defendant first argues that the criminal contempt conviction is "legally insufficient on the [element] of physical menace" and that the reckless endangerment conviction is "legally insufficient on the [element of] conduct which created a substantial risk of serious physical injury." Critically, however, defendant does not claim that the trial evidence, viewed in the light most favorable to the People, failed to establish the challenged elements beyond reasonable doubt, or, more precisely, that no reasonable juror could have so found (see generally Jackson v Virginia, 443 US 307, 313-324 [1979]; People v Danielson, 9 NY3d 342, 349 [2007]). Quite the opposite; defendant all but concedes the legal sufficiency of the trial proof underlying the challenged elements by acknowledging that "there may have been proof in the record to support the convictions generally." Defendant's effective concession is well taken; viewing his wife's testimony in the light most favorable to the People, a rational juror could easily find that the People established the challenged elements (physical menace and substantial risk of serious physical injury) beyond reasonable doubt.
Instead, defendant argues only that the convictions on counts two and five are legally insufficient due to the jury's acquittals on the remaining counts. According to defendant, "when the conduct that was plainly rejected by the jury is removed from consideration, there is nothing left to support the physical menace conviction [count two] or the conviction for engaging in conduct that created a substantial risk of serious physical injury [count five]." Put differently, "the only conduct upon which defendant could be found guilty of the crimes for which he was convicted was smashing [his wife's] car windows with a metal pipe while she was inside it. Because the jury was unwilling to find that defendant engaged in that conduct," defendant continues, "the convictions must be reversed as unsupported by legally sufficient evidence." We are unpersuaded.
Preliminarily, defendant's claim of legal insufficiency due to inconsistent verdicts "was not raised at a time when it could have been cured by resubmission to the jury, and it is thus unpreserved" (People v Diaz, 152 AD3d 471, 472 [1st Dept 2017], lv denied 30 NY3d 1019 [2017]; see generally People v Ramos, 19 NY3d 133, 137 [2012]; People v Carncross, 14 NY3d 319, 324-325 [2010]). Contrary to defendant's contention, his post-trial CPL article 330 motion — however construed — was not, by itself, adequate to preserve his current argument for appellate review (see People v Padro, 75 NY2d 820, 821 [1990], rearg denied 75 NY2d 1005 [1990], rearg dismissed 81 NY2d 989 [1993]).
Preservation aside, the mixed verdicts provide no basis to question the legal sufficiency of the convictions (see Diaz, 152 AD3d at 472). In fact, defendant's argument is a classic "masked repugnancy" argument (People v Rodriguez, 179 AD2d 554, 554 [1st Dept 1992]), and it suffers from the same premise error that dooms all "masked repugnancy" arguments: it assumes that a jury's verdict on one count can be weaponized to attack the legal or factual sufficiency of its verdict on another count. But that is not the law. To the contrary, the Court of Appeals has repeatedly held that "[f]actual inconsistency [in a verdict]— which can be attributed to mistake, confusion, compromise or mercy—does not provide a reviewing court with the power to overturn a verdict' " on legal sufficiency grounds (People v Abraham, 22 NY3d 140, 146 [2013] [emphasis added], quoting People v Muhammad, 17 NY3d 532, 545 [2011]; see also People v Rayam, 94 NY2d 557, 561-563 [2000] [same rule, with respect to factual sufficiency [*4]review])[FN1]. Abraham flatly rejected the very argument put forward by defendant here, i.e., that "factual inconsistency in the verdict renders the record evidence legally insufficient to support the conviction" (22 NY3d at 147). "Put another way," the Abraham Court continued, "an acquittal is not a preclusive finding of any fact, in the same trial, that could have underlain the jury's determination . . . Therefore, even assuming, as submitted by defendant, that the jury's verdict in this case presented a factual inconsistency, it does not affect the propriety of his conviction" (id.).[FN2]
It is true, as defendant points out, that the Abraham opinion features the following caveat: "in some instances, a reviewing court may consider a jury's acquittal on one count in reviewing the record to determine if a factually inconsistent conviction on another count is supported by legally sufficient evidence" (22 NY3d at 146-147, citing, inter alia, People v Yarrell, 75 NY2d 828, 829 [1990], revg on dissent below 146 AD2d 819, 821-822 [2d Dept 1989] [Brown, J., dissenting]). Rayam, also citing Yarrell, has a similar caveat: "we do not mean to imply that, under no circumstances may an intermediate appellate court consider jury acquittals in performing weight of the evidence review. Nor should our ruling here be deemed to cast in doubt the propriety of consideration of such acquittals in some instances on legal issues such as the sufficiency of the evidence" (94 NY2d at 563 n). At first glance, these caveats appear to be in tension with the clear holdings of both Abraham and Rayam. After all, if — as both Abraham and Rayam repeatedly hold — factual inconsistency across multiple verdicts "does not provide a reviewing court with the power to overturn a verdict," then how could such inconsistency ever be relevant to the calculus of legal and factual sufficiency? It would seem to be a pointless exercise to even analyze alleged factual inconsistencies across multiple verdicts if the outcome of that analysis was a foregone conclusion.
The seemingly irreconcilable language in Abraham and Rayam can be explained in either (or both) of two ways, however. First, it could be understood simply to approve cases like People v Fagiolo (146 AD3d 724, 725 [1st Dept 2017]), People v Samuels (130 AD3d 757, 758-759 [2d Dept 2015]), and People v O'Neil (66 AD3d 1131, 1133-1135 [3d Dept 2009]), where the Appellate Division merely noted the jury's acquittals on other related counts to bolster its own independent conclusion that the evidence underlying the convicted counts was factually insufficient. In that scenario, the convictions fell because the jury wrongly weighed the evidence that underlay them, not because the jury acquitted on the other counts. The fact that the convictions were against the weight of the evidence served to fortify the factual correctness of the jury's acquittals, and the Appellate Division was simply highlighting that truism as further [*5]support for its independent conclusion that the convictions were against the weight of the trial evidence. The caveats in Abraham and Rayam make perfect sense in that context.
Alternatively, the caveats in Abraham and Rayam could be understood by reference to their citations of Yarrell. In Yarrell, Justice Richard A. Brown's dissenting opinion at the Appellate Division, which was adopted by the Court of Appeals, used the jury's acquittal on one count as a means of identifying the legal theory underlying its conviction on a separate count (specifically, whether the conviction was based on principal or accomplice liability) (see 146 AD2d at 821). Justice Brown then proceeded to analyze whether the jury's conviction under that theory was supported by legally sufficient evidence at trial (see id. at 821-822). Yarrell did not — as defendant urges here — use the jury's acquittal on one count as a means of determining whether its conviction on a separate count was itself supported by legally sufficient evidence. Viewed in that light, the seemingly contradictory lines in Abraham and Rayam can be reconciled as a mere reiteration of Yarrell, which does not undercut the general rule (amply expressed in Abraham and Rayam) that inconsistent verdicts are not inherently incorrect verdicts.[FN3]
Importantly, the Yarrell look-through does not apply here inasmuch as only one legal theory of guilt was submitted to the jury (principal liability). And without the Yarrell look-through, defendant is stuck with the general rule: "even assuming, as submitted by defendant, that the jury's verdict in this case presented a factual inconsistency, it does not affect the propriety of his conviction[s]" (Abraham, 22 NY3d at 147). Defendant's legal sufficiency challenge based on allegedly inconsistent verdicts thus fails (see id.; Diaz, 152 AD3d at 472; People v Ramirez, 140 AD3d 545, 545 [1st Dept 2016], lv denied 28 NY3d 973 [2016]; People v Ekwegbalu, 131 AD3d 982, 983 [2d Dept 2015], lv denied 26 NY3d 1108 [2016]; People v Alcindor, 118 AD3d 621, 621 [1st Dept 2014], lv denied 24 NY3d 1000 [2014]; People v Johnson, 73 AD3d 578, 580 [1st Dept 2010], lv denied 15 NY3d 893 [2010]; Rodriguez, 179 AD2d at 554-555).
B
Defendant next advances an alternative challenge to the legal and factual sufficiency of his conviction for first-degree criminal contempt under count two. Specifically, defendant says that the People failed to prove the so-called "service element" of that crime, i.e., that the underlying protective order was "duly served" upon him or that he had "actual knowledge [thereof] because he . . . was present in court when [it] was issued" (Penal Law § 215.51 [b]). Because the service element is phrased disjunctively — i.e., it is satisfied if the defendant violates either a "duly served" protective order or a protective order of which he or she has "actual knowledge" because of his or her presence in court (see People v Heiserman, 127 AD3d 1422, 1423 [3d Dept 2015]) — the People need prove only one of the statutory alternatives beyond reasonable doubt (see People v Becoats, 17 NY3d 643, 654 [2011], cert denied 566 US 964 [2012]; People v Giordano, 87 NY2d 441, 451 [1995])[FN4]. As the First Department wrote in People v Conroy (53 AD3d 438 [1st Dept 2008], lv denied 11 NY3d 735 [2008], cert denied 555 US 1013 [2008]), "when disjunctive theories of criminality are submitted to the jury and a general verdict of guilt is rendered, a challenge based on evidentiary insufficiency will be [*6]rejected as long as there was sufficient evidence to support any of the theories submitted" (id. at 441 [internal quotation marks omitted]; accord Griffin v United States, 502 US 46, 56 [1991], reh denied 502 US 1125 [1992]).
Here, the People satisfactorily proved that the protective order was "duly served" upon defendant. As the Family Court clerk testified, the protective order itself recites — multiple times, without contradiction — that it was "personally served" upon defendant in court, and it is black letter law that "personal service" constitutes "due service" (see Demarest v Darg, 32 NY 281, 283 [1865]; Matter of Loughrey, 37 AD2d 187, 189 [3d Dept 1971]; People v Blake, 23 AD2d 581, 581 [2d Dept 1965]; Threat v City of New York, 159 Misc 868, 872 [Manhattan Mun Ct 1936]). Contrary to defendant's contention, the Family Court clerk did not testify that she was "unsure" if he was personally served with the protective order. Thus, sitting as a second jury and viewing the evidence in a neutral light (see generally People v Kancharla, 23 NY3d 294, 303 [2014]; Delamota, 18 NY3d at 116-117), we are satisfied beyond reasonable doubt that the protective order was "duly served" upon defendant within the meaning of Penal Law § 215.51 (b) (see e.g. People v Pham, 118 AD3d 1159, 1160 [3d Dept 2014], lv denied 24 NY3d 1087 [2014]; People v Perser, 67 AD3d 1048, 1050 [3d Dept 2009], lv denied 13 NY3d 941 [2010]; People v Wilmore, 305 AD2d 117, 118 [1st Dept 2003], lv denied 100 NY2d 589 [2003]). Accordingly, the verdict is not against the weight of the evidence as to the service element. And because the verdict is consistent with the weight of the evidence, it is necessarily founded upon legally sufficient evidence.[FN5]
Finally, it is true, as defendant highlights in his brief, that the record is unclear about whether he was advised of the issuance and contents of the order in open court. But these inconsistencies raise, at most, a reasonable doubt as to whether defendant had "actual knowledge [of the protective order] because he . . . was present in court when such order was issued" (Penal Law § 215.51 [b]) — the alternative means of satisfying the service element of criminal contempt in the first degree. The inconsistent notations regarding advisement do not raise a reasonable doubt as to whether defendant was "duly served" with the protective order [FN6]. Thus, the gaps in the proof upon which defendant relies furnish no ground for questioning either the legal or factual sufficiency of the service element (see Conroy, 53 AD3d at 441; cf. People v Burch, 97 AD3d 987, 990 n 3 [3d Dept 2012], lv denied 19 NY3d 1101 [2012]; see generally Becoats, 17 NY3d at 654; Giordano, 87 NY2d at 451).
II
Defendant's remaining points relate to the effectiveness of his trial lawyer and to the final order of protection. These assignments of error can be addressed summarily.
A
Defendant argues that his attorney rendered ineffective assistance by: (1) failing to preserve a legal sufficiency challenge to count two; (2) inadequately cross-examining his wife; and (3) delivering a summation that unnecessarily denigrated his character. We disagree. As we explained above, counsel had no viable avenue to challenge the legal sufficiency of count two, [*7]and "[t]here can be no denial of effective assistance . . . arising from counsel's failure to make a motion or argument that has little or no chance of success" (People v Caban, 5 NY3d 143, 152 [2005] [internal quotation marks omitted]). The balance of defendant's complaints reflect "simple disagreement with [trial counsel's] strategies, tactics or the scope of possible cross-examination," and that, of course, "does not suffice" to establish ineffective assistance (People v Benevento, 91 NY2d 708, 713 [1998] [internal quotation marks omitted]). It is worth pointing out that counsel secured defendant's acquittal on four of the six counts, including the most serious (i.e., count three, the only class D felony in the indictment).
B
We turn now to defendant's challenges to the final order of protection issued at sentencing. On that score, defendant initially claims that County Court violated CPL 530.12 (5) by issuing the order without stating its reasons on the record. Defendant's claim is concededly unpreserved for appellate review, however, and we decline to reach it as a matter of discretion in the interest of justice (see People v Ludwig, 104 AD3d 1162, 1164 [4th Dept 2013], affd 24 NY3d 221 [2014]; People v St. Laurent, 70 AD3d 1417, 1418 [4th Dept 2010], lv denied 15 NY3d 756 [2010]). To the extent that defendant fears that he will violate the protective order and thereby incur additional contempt charges by serving his wife with divorce papers in the future, he can always move in County Court to amend the protective order to permit necessary legal communications.
Lastly, defendant argues that the final protective order contains an improper expiration date of May 18, 2026. Although this particular argument is also unpreserved for appellate review, we will nevertheless consider it in the interest of justice and grant relief (see CPL 470.15 [3] [c]; People v Richardson, 143 AD3d 1252, 1255 [4th Dept 2016], lv denied 28 NY3d 1150 [2017]; People v DeFazio, 105 AD3d 1438, 1439 [4th Dept 2013], lv denied 21 NY3d 1015 [2013]; People v Goins, 45 AD3d 1371, 1372 [4th Dept 2007]). The "duration of an order of protection . . . shall not exceed the greater of: (i) eight years from the date of . . . sentencing, or (ii) eight years from the date of the expiration of the maximum term of an indeterminate . . . sentence of imprisonment actually imposed' " (People v Hopper, 123 AD3d 1234, 1235 [3d Dept 2014], quoting CPL 530.12 [5] [A]). Here, defendant was sentenced on October 31, 2014, and his indeterminate prison term expired on April 15, 2018. The protective order's expiration date of May 18, 2026 is therefore improper, for it is more than eight years from both the sentencing date and the maximum expiration date of defendant's custodial term. The matter must thus be remitted for re-calculation of the expiration date of the final protective order (see People v Nicholson, 118 AD3d 1423, 1426 [4th Dept 2014], affd 26 NY3d 813 [2016]; DeFazio, 105 AD3d at 1439; see generally CPL 470.45).
CONCLUSION
Accordingly, the judgment of the Steuben County Court should be modified and the matter remitted in accordance with the foregoing, and, as so modified, the judgment should be affirmed.
Entered: June 15, 2018
Mark W. Bennett
Clerk of the Court



Footnotes

Footnote 1: An inconsistent verdict is to be distinguished, of course, from a repugnant verdict, which does provide a basis for reversal (see Muhammad, 17 NY3d at 538-545). Defendant's brief does not advance a repugnancy argument, however. To be clear, we have analyzed defendant's argument as an unpreserved legal sufficiency claim, and we have rejected it on those terms; we are not improperly treating defendant's legal sufficiency argument as a repugnancy claim (compare People v Mason, 101 AD3d 1659, 1660-1661 [4th Dept 2012], revd 21 NY3d 962 [2013]).

Footnote 2: The rule of Abraham, Muhammad, and Rayam is not some newfangled development. Over 35 years ago, the Court of Appeals wrote that, "[w]hen the jury has decided to show lenity to the defendant, an accepted power of the jury . . . , the [appellate] court should not then undermine the jury's role and participation by setting aside the verdict" (People v Tucker, 55 NY2d 1, 7 [1981], rearg denied 55 NY2d 1039 [1982]). The Supreme Court made a similar point in Jackson: "The question [of] whether the evidence is constitutionally sufficient is of course wholly unrelated to the question of how rationally the verdict was actually reached. Just as the [legal sufficiency] standard . . . does not permit a court to make its own subjective determination of guilt or innocence, it does not require scrutiny of the reasoning process actually used by the factfinder—if known" (443 US at 319 n 13).

Footnote 3: To the extent that the Third Department read Yarrell more expansively in People v Wallender (27 AD3d 955, 956-958 [3d Dept 2006]), we decline to follow it. Wallender is an outlier case whose core rationale has never been applied in subsequent years. Moreover, any dispute about Wallender's continuing viability was laid to rest, in our view, by the later decision of the Court of Appeals in Abraham.

Footnote 4: To the extent that People v Soler (52 AD3d 938, 939 [3d Dept 2008], lv denied 11 NY3d 741 [2008]) suggests that the statute requires both proof of the order's due service and independent proof that the defendant had actual knowledge of the order's contents from a source other than its text, we decline to follow it. Indeed, in Heiserman, the Third Department appears to have implicitly retreated from this aspect of Soler.

Footnote 5: Defendant does not argue that the protective order was improperly admitted for the truth of the matters asserted therein. Nor does he argue that the markings on the order, standing alone, are inadequate to establish that it was "duly served." Nor does defendant challenge the legal or factual sufficiency of either conviction on any other ground, i.e., with respect to any other element or defense.

Footnote 6: In fact, one can easily envision a scenario in which a person is duly served with a protective order but is not advised of its issuance and contents. In that scenario, the order has been duly served, but it cannot be said that the targeted party had actual knowledge of the order because of his presence in court when the order was issued.